## The Pennsylvania Canal Co. *versus* Burd.

The Pennsylvania Canal Company is neither liable as a common carrier nor an insurer. As owner and operator of a public water highway, it is bound to so maintain and manage the canal, that it can be used with reasonable safety and convenience by the public, but it is not liable for an injury resulting from an unknown obstruction, which could not have been guarded against without the exercise of extraordinary and unreasonable care.

May 15th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and WOODWARD, JJ., absent.

Error to the Court of Common Pleas of *Perry county:* Of May Term 1879, No. 81.

Case by A. J. Burd against the Pennsylvania Canal Company.

The declaration set forth that the Pennsylvania Canal Company, being the owner of the main line of the canal from Columbia to Wikesbarre, and having the authority to charge tolls on boats navigating their canal, are bound to keep the same filled with water, and to use due and reasonable care, skill and diligence in the management thereof, and that the defendants neglected to do so, but permitted the same to get out of order, and suffered logs and other debris to accumulate in the channel, and that in consequence thereof, when the water was drawn off, on the 14th day of May 1876, by order of the supervisor, in the sixteen-mile level, in Luzerne county, plaintiff's boat, "The Two Brothers," loaded with stone-coal, sunk upon a log in the bottom of the canal, and was destroyed; further, the plaintiff charges, that the said boat was tied up at a place designated by the agent of the defendants.

The defendants pleaded, not guilty.

It appeared, that about 10th May 1876, the plaintiff's boat.

[Pennsylvania Canal Co. *v.* Burd.]

loaded with one hundred and ten tons of coal, himself the master, was coming down the sixteen-mile level, and, when opposite Shick-shinny, stopped, in consequence of a sunken boat considerably lower down. Other boats were also stopped in front of plaintiff's. It became necessary to draw off the water from this level, in order to raise the obstructing sunken boat. Orders were given to the boats in front of plaintiff's to move to a certain point below, but the plaintiff was directed to remain where he was, place his boat in the centre of the canal, throw out lines to berme and tow-path from bow and stern, and await the withdrawal of the water. The boat was an old one. Where she laid there were eight feet of water, and this particular section of the canal had been thoroughly cleaned and repaired the previous winter.

After the water had been taken out of the level, it was discovered that a green hemlock log, about thirty feet long, about twelve inches at the butt and six inches at the top, was lying in the bottom of the deep place where the plaintiff's boat had settled. This log could not be seen from the banks of the canal. Its existence was not known to the defendants. It was not there when the water was let into the division in the spring of 1876. No knowledge of it was brought home to the defendants, but, on the contrary, all the canal employees testified that it was there without their knowledge, and that the canal was daily inspected and watched, and the utmost diligence exercised to keep the works in good, safe and proper condition.

After the plaintiff's evidence was in, the defendants moved for a nonsuit, on the ground that no negligence was disclosed thereby, which was refused.

The plaintiff, inter alia, submitted the following point : ·

1. That if the jury believe that when the water was drawn from the canal of defendant the boat of plaintiff rested upon the log spoken of by all the witnesses in such a manner as that they are satisfied that the plaintiff's boat was injured by the resting upon the log, and thereby sunk, and that no other examination was made on part of defendant than that detailed by defendant's witnesses, to wit: observation from the tow-path at a distance of from twenty to twenty-five feet, immediately before the water was let into the canal, and with the knowledge on the part of defendant, that during the entire winter, or from the close of navigation in the fall of 1875, water to the depth of two feet nine inches was in that part of the level running along and by Shickshinny, where the boat of plaintiff lay, then this would be such negligence on part of defendant, as makes her liable in damages to the value of the plaintiff's boat.

The court, Junkin, P. J., answered as follows: "If the jury believe that the log sunk the boat, that this log had floated there on the surface of the water in the canal until waterlogged, it

would be strong evidence of a want of care on the part of the company from which you could and should infer negligence.

"But we cannot say that the inspection of the canal by the company in the spring of 1876, in the manner indicated in this point, was insufficient, or amounted to negligence in the company. Such inspection under the authority cited in the charge (Insurance Co. v. Delaware Canal Co., 10 Bosworth 180,) seems sufficient, if it was carefully done; if carelessly done, so that the log if visible to the eye was overlooked, then it was negligence, and the company would be liable."

The defendants submitted the following point, to which is subjoined the answer of the court:

The fact of the plaintiff's boat having been injured by the log sunken in the bottom of the canal so as not to be visible or known to the defendants' employees, even should the jury so believe, does not show such negligence as to make the defendants responsible for the injury, and your verdict should be for the defendants.

Ans. "We answer, that we affirm this point except in this: that the company would be liable notwithstanding, if this sunken log floated to its place on the surface of the canal until waterlogged, because of the fact of its floating long enough to become so, could not have escaped the most ordinary vigilance. The company would also be liable if its employees were negligent in failing to see the log if it was there and visible in the spring before the water was in."

In the general charge the court, inter alia, said: "When the plaintiff was directed by the foreman and watcher to stand fast and go down to the bed of the canal where his boat then lay, he was not only bound to obey the order, but had the right to believe that the location was safe, and if in fact his boat was sunk in settling on a log, there would be a prima facie case of negligence made out against the company, because a log unlike a stone would float along before it would sink, and if a floating log escaped the attention of the company for any considerable time, long enough, to become waterlogged and sink, the fact of negligence could hardly be denied. * * * In determining this question, should it be found by you that this log floated on the surface of the canal at any point and was not taken out, but permitted to float until it sunk, then it would be negligence in the company, and the plaintiff should recover the value of his boat."

The verdict was for plaintiff for $200, and after judgment the defendants took this writ, assigning for error the answers to the above points, and the portion of the charge noted.

*Francis Jordan* and *C. J. T. McIntire*, for plaintiffs in error.

*J. C. McCallister* and *W. A. Sponsler*, for defendant in error.

[Pennsylvania Canal Co. *v.* Burd.]

Mr. Justice STERRETT delivered the opinion of the court, October 6th 1879.

In its relation to the defendant in error, the Pennsylvania Canal Company was neither a common carrier nor an insurer, nor liable as such. As owner and operator of a public water highway, formerly owned by the state, it was bound to so maintain and manage the canal that it could be used with reasonable safety and convenience by the public, for whose benefit it was constructed. To this end the duty of the company to the public demanded the exercise of reasonable and ordinary care; and it is by this standard its liability to the plaintiff below must be measured.

It follows from this that the company is not liable for injuries arising from unforeseen and unexpected contingencies, such as great freshets and tempests, or other events which, in the exercise of reasonable and ordinary care, would not be anticipated, or could not be provided against. An injury resulting from an unknown obstruction, which could not be guarded against, without the exercise of extraordinary or unreasonable care, must be considered an accident for which no one is specially to blame, and for which the company is not liable. It would be unreasonable to require a canal company to sound and drag the whole length of its canal continually, to ascertain what obstructions might lie at the bottom, or to keep guards along the banks, to prevent the commission of injuries by careless or designing persons. But it is bound, annually at least, when the water is out of the canal, to inspect the bed and remove obstructions: Exchange Insurance Co. *v.* The Delaware Canal Co., 10 Bosworth 180.

As the basis of his claim, the plaintiff below charged that the company was guilty of negligence in permitting a sunken log to lie in the bottom of the canal, on which his boat settled and was destroyed. It may be conceded, that if the company knew, or, by exercising reasonable care and diligence, might have known, that the obstruction existed, and neglected to remove it, a clear case of liability would be presented; but it is claimed that there was no evidence of either knowledge or culpable ignorance on the part of the company, and that the learned judge erred, not only in submitting the question of negligence to the jury, on wholly insufficient testimony, but in suggesting a state of facts not arising out of the evidence, and thereby gave the jury an unwarrantable license to speculate as to how the log came there, and to infer therefrom that the company knew, or should have been aware, of its presence, as a dangerous obstruction to navigation.

An examination of the testimony before us fails to disclose any evidence upon which the jury could reasonably and properly conclude there was negligence. In the concluding part of his charge, the learned judge says, "There is no evidence that the company had any knowledge of this log being there until the water was

[Pennsylvania Canal Co. v. Burd.]

drawn off, in May 1876, and Burd's boat was sunk. The case thus stands on very narrow ground, * * * and you must, in order to find for the plaintiff, be satisfied that the persons whose duty it was to inspect the canal in the spring of 1876 did not perform that duty in a careful manner, and overlooked the log if it was then visible in this deep part of the canal. These inspecting parties say it was not visible then, and we have said, if it was not, or if there and invisible, the plaintiff cannot recover; and if it floated from Henlock creek, waterlogged and unseen after the navigation opened, in the spring of 1876, the company is not liable." While the question of knowledge on the part of the company is thus practically set at rest, for want of evidence thereof, the jury could not fail to understand that it was still incumbent on them to inquire whether the duty of inspection was carelessly or negligently performed. We discover nothing in the testimony to justify the court in submitting this question to the jury.

While refusal to enter judgment of nonsuit is not assignable for error, it may not be amiss to say that the court would have been justified in entertaining the motion. Viewing the testimony in the most favorable light, it was manifestly insufficient to sustain the allegation of negligence on which his claim is founded; in other words, there was no evidence from which the jury might reasonably and properly conclude there was negligence.

In that part of the charge, covered by the fourth assignment, the learned judge said to the jury, that if plaintiff's "boat was sunk in settling on a log, there would be a prima facie case of negligence made out against the company, because a log, unlike a stone, would float along before it would sink, and if a floating log escaped the attention of the company for any considerable time, long enough, say, to become waterlogged and sink, the fact of negligence could hardly be denied." * * * "In determining this question, should it be found by you that this log floated on the surface of the canal at any point, and was not taken out, but permitted to float until it sank, then it would be negligence in the company, and the plaintiff should recover the value of his boat."

If there had been any testimony to prove such a state of facts as is here suggested to the jury, the principles of law applicable to them would perhaps not be disputed, but the vice of this portion of the charge, as well as the answers complained of in the second and third assignments, is that there is no testimony tending to prove where the log came from, or that it "floated on the surface of the canal at any point, and was not taken out, but permitted to sink," &c. The suggestion of these as possible or probable facts, was wholly unwarranted by the testimony, and could only tend to lead the jury into a field of vague speculation, resulting in a verdict unsupported by the evidence.

Judgment reversed.