fendant. There is no pretense, so far as this record discloses, that the work was unnecessarily done; and it seems to us, under these circumstances, that the engineer had no right, in his final certificate, to reject this work as not being included in the contract. It would appear, therefore, that it was error upon the part of the court to dismiss the complaint. Certainly, with respect to this flagging, there was a question which should, at least, have been submitted to the jury, under proper instructions, as to whether the action of the engineer arose from a misconstruction of the contract, or whether it was a determination in respect to amounts, a subject upon which, by the terms of the contract, his decision was final if made in good faith.

We think, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

(7 App. Div. 238)

## SULLIVAN v. UNION RY. CO.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

MASTER AND SERVANT—DEFECTIVE APPLIANCE—EVIDENCE.

In an action for personal injuries, plaintiff testified that, in the course of his employment, he opened a steam pipe, which exploded at a joint called a "flange union," and injured him. Plaintiff's assistant testified that he heard the pipe crack at the time of the explosion. One of defendant's engineers testified that on the same afternoon the chief engineer brought a broken pipe into the engine room, but he did not see any flange union, and could not say that the broken pipe had been so connected. The chief engineer was not called as a witness, and there was no evidence as to what examination or repairs were made after the explosion, though it appeared that some repairs were made; nor was it shown whether the broken pipe referred to was taken from the boiler after the explosion, or where it was found. There was evidence that the pipe had been leaking at the flange union, and that a flange union was an unsafe contrivance. *Held*, that the evidence was sufficient to sustain a verdict for plaintiff.

Appeal from circuit court, New York county.

Action by Edward Sullivan against the Union Railway Company for personal injuries. From a judgment entered on a verdict in favor of plaintiff for $900 damages and $251.67 costs, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

The action was brought to recover damages for injuries to the plaintiff, alleged to have been caused by the negligence of the defendant. The defendant was engaged in the business of operating an electric railway in the neighborhood of West Farms, New York City. It owned and used in its business a power house, which contained six Babcock-Wilcox boilers, which were used in the process of generating electricity. At the bottom, near the rear end of each boiler, was a mud drum,—an iron vessel designed to receive the dirt and sediment from the water in the boiler. The mud drum extended across the boiler, and in its rear were two blow holes. A brass pipe extended along the outside of the mud drum and was connected with the two blow holes by two pipes extending from the blow holes to the brass pipe. The brass pipe extended out through the brick wall inclosing the boiler, and had a blow-off cock at the outer end. The brass pipe was made in two pieces, which were connected midway between the connections with the blow holes

by a flange union; i. e. a flange was screwed upon the end of each piece of pipe, and these two flanges were then brought together and bolted. The object of this construction was to remove the dirt and sediment from the boiler which should accumulate in the mud drum. When the blow-off cock was opened, the pressure of steam in the boiler upon the water, dirt, and sediment in the mud drum would force the same out through the blow holes and their pipe connections into the brass pipe, and so out into its connections with the waste pipe outside. The plaintiff was a fireman in the employ of the defendant, and had charge of the boilers during a portion of each day, and it was his duty, before leaving the boilers each day, to open the blow-off cocks, and clean the dirt and sediment out of the mud drum, in the manner already indicated. January 11, 1893, about 3 p. m., the plaintiff went to the blow-off cock of one of the boilers, and, with a wrench used for the purpose, opened the cock. Thereupon some kind of an explosion occurred, which caused the injuries to the plaintiff for which this action is brought to recover damages. The questions of fact involved on the trial were the nature of the explosion, the negligence of the defendant in the construction and condition of the appliance which exploded. the contributory negligence of the plaintiff, and the extent of his injuries. There was serious contention as to all these questions. The case was submitted to the jury. A verdict was rendered in favor of the plaintiff for $900, and from the judgment rendered thereon, and from the order denying a motion for a new trial on the minutes, this appeal is taken.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles C. Nadal, for appellant.

T. B. Wakeman, for respondent.

WILLIAMS, J.   It was claimed on the part of the plaintiff that the brass pipe back of the mud drum exploded at the joint of the flange union. The defendant claimed there was no evidence whatever that the pipe burst or gave way at that joint, and no evidence in any way to show how or why the accident occurred. The plaintiff testified that immediately upon his opening the stopcock the explosion occurred, the doors to the flues were thrown open, and the door frames were blown out of place, and steam, water, and ashes came out against him, knocked him down, and injured him; that he was burned and scalded so that the skin came off from different parts of his body, and there were ashes all over him; and that he was in bed and in the house for a long time. Glackin, a helper of plaintiff, was present at the time of the accident, and he testified, among other things, that he heard the pipe crack at the time of the explosion. Dellett, an engineer in the employ of the defendant, was in the engine room at the time of the accident, and went down into the boiler room an hour or so after the explosion, and he testified that on that same afternoon, or soon after the accident, he saw a broken pipe; that the chief engineer, O'Keefe, brought it into the engine room, and that the pipe he saw was broken in the thread, but he did not see any flange union, and could not say that this broken pipe had been connected with any flange union, and he could not say that the broken pipe was in the boiler at the time of the explosion. O'Keefe was not produced as a witness on the trial, and there was no proof on the part of the defendant as to what examination or repairs of the

boiler or pipes were made after the explosion, though it appeared the boiler was subsequently repaired; nor was there any proof on the part of the defendant as to whether this broken pipe was taken from the boiler after the explosion, or where O'Keefe found it, or where it came from. There was evidence tending to show that there had been some defect and leaking of water at the flange union in this boiler a few days before the explosion, and that repairs had been made thereon. There was also evidence tending to show that such a flange union was an unsafe and dangerous construction, and was liable to give way, and cause an explosion. It would seem that it was within the power of the defendant to show just what the character of the explosion was, and just what pipe, if any, was broken, if it was not the pipe at the joint of the flange union in question. It is hardly credible that an examination was not made by the chief engineer, and the precise condition of things ascertained after the explosion occurred; and, in the absence of any evidence on the part of the defendant upon this subject, we think there was evidence in the case from which the jury might well find, and were justified in finding, that the pipe gave way at the joint of the flange union, as claimed by the plaintiff. Much evidence was given in the case upon the one side and the other as to whether the defendant was guilty of negligence in furnishing the pipes and the flange in question as machinery for the use of its employé; whether the construction was defective, was unsafe, and dangerous; and whether it was the fault of the defendant that it was there. This evidence was conflicting, and all these questions relating to the alleged negligence of the defendant were submitted to the jury in a charge wherein the learned trial court correctly stated the principles of law applicable thereto, and fairly and impartially called attention to the evidence. We do not deem it necessary to refer to the evidence in detail, or to discuss the principles of law laid down. We think, upon all the evidence in the case, the question of the defendant's negligence was one of fact for the determination of the jury, and that they were justified in the conclusion they arrived at.

The defendant claimed that the explosion occurred, not at the time the plaintiff opened the blow-off cock, but when he closed it, and that the cause of the explosion was the sudden shutting off of the steam; that plaintiff ought to have closed the cock slowly, and was guilty of negligence in this respect, which was the real cause of the explosion. This, if true, would charge plaintiff with contributory negligence, and would bar his right to recover. Some evidence was given on the part of the defendant tending to show this state of facts. The plaintiff's evidence was, however, positively that the explosion occurred immediately upon his opening the stopcock, and that it did not take place when he was closing it. Upon the whole evidence it was a question for the jury whether the plaintiff was free from contributory negligence, and their finding in his favor upon that question was justified by the evidence, and should not be disturbed.

The question of the extent of the plaintiff's injuries, and the

amount of damages that would fairly compensate him therefor, was also one for the jury. The verdict was not large, but was quite moderate, and we see no reason to interfere with the conclusion arrived at by them.

There were exceptions to the reception of evidence, and to the charge to the jury, but they are not of sufficient merit to call for special notice.

We think the judgment should be affirmed, with costs. All concur.