GUINAN et al. v. BOSTON, CAPE COD & NEW YORK CANAL CO. et al.

(Circuit Court of Appeals, Second Circuit. July 16, 1924.)

No. 325.

1. **Canals ⬥2—Ship canal public highway.**

A ship canal is a navigable public highway, though operated by a private company, which exacts tolls from those using it.

2. **Canals ⬥29—Company not insurer against obstructions.**

A company, though maintaining for its own profit a canal open to public navigation on payment of tolls is not an insurer against obstructions therein, but is bound only to reasonable care that it may be navigated without danger.

3. **Canals ⬥30—Burden of proof on libelant for injury to vessel.**

Libelants suing for injury to their vessel while passing through respondent's canal, have the burden of showing a breach of respondent's duty of taking reasonable care that navigation may be without danger.

4. **Canals ⬥30—Evidence held not to show negligence as to vessel injured by obstruction.**

Burden of showing negligence of a canal company, whereby a barge towed through canal was injured by obstruction, *held* not sustained; the obstruction being probably a partially submerged, heavy, floating object, which passed out with the tide, and presence of which was not previously known, and there being no presumption of negligence from the mere fact of the accident.

5. **Evidence ⬥94—Burden of proof never changes.**

The burden of proof never changes, though the burden of evidence may.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Bernard F. Guinan and another against the Boston, Cape Cod & New York Canal Company and another. From a decree for libelants against the named respondent, it appeals. Reversed.

Glenn & Ganter, of New York City (Garrard Glenn and William B. Walsh, both of New York City, of counsel), for appellant Boston, Cape Cod & New York Canal Co.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for appellant New England Fuel & Transportation Co.

Leo J. Curren, of New York City, for appellees Guinan and Garner.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. The libelant Guinan is a citizen and resident of the state of New York, and he maintains an office in the borough of Manhattan in the city of New York. At the times hereinafter mentioned he was the owner of the barge Kathleen, which he used in his business of transporting merchandise by water, and which was without motive power of its own. It is alleged that prior to the damage hereinafter mentioned the barge was tight, staunch, and strong. The libelant Garner was the master of the Kathleen at the times mentioned herein.

The Boston, Cape Cod & New York Canal Company, a respondent, is a corporation organized and existing under the laws of the state of Massachusetts, but at all the times herein mentioned it has maintained an office in the borough of Manhattan in the city of New York for the transaction of business. It is hereinafter called the Canal Company. The New England Fuel & Transportation Company, also a respondent, is likewise a corporation organized and existing under the laws of the state of Massachusetts. It also maintains an office for the

transaction of business in the borough of Manhattan in the city of New York. It is hereinafter called the Transportation Company.

The Canal Company, in accordance with its charter powers, constructed, or caused to be constructed, and owned, maintained, and operated, a tidewater ship canal for the passage of water craft between Buzzard's Bay and Cape Cod or Barnstable Bay, Mass. It imposed and collected tolls upon all water craft using the canal for purposes of passage, being authorized thereto by charter.

The libel alleges upon information and belief as follows: On the 16th day of June, 1918, the barge was under charter to one James Hughes, Jr., of New York City, who caused the same to be towed from New York to the entrance of the canal. It carried a cargo of 865 tons of coal, consigned to Boston, Mass., and respondent, the New England Fuel & Transportation Company, had agreed with Hughes to tow the barge through the canal and to Boston, in consideration of the payment of the usual towage rates. The Canal Company was to receive the usual tolls for the passage of the barge through the canal. Between 11 and 11:30 p. m. on that day, when the weather was clear, the steam tug Neptune, owned by the Transportation Company and operated by its employees, had the barge in tow in performance of the towage contract, and started through the canal with the barge and the loaded barge Scully Boys; the latter towing astern of the Kathleen and about six feet therefrom, and the tug having a hawser to the Kathleen. The Kathleen was drawing between 9 and 10 feet. About 12 o'clock the same night, while the tug was proceeding through the canal with her tow, the Kathleen suddenly and without warning brought up against a rock or other obstruction under water, struck the same with great force and violence, and caught thereon. Thereupon the Scully Boys ran up hard against the Kathleen, and the impact, either alone or in conjunction with the hauling of the tug, dislodged the Kathleen, and she proceeded on in the tow of said tug, but immediately began to take in water through the wounds received in the collision. When she reached the further end of the canal the Kathleen sank as a result of said collision. The libelants claimed damages in the sum of $19,658.34.

The libelants alleged that the collision and resulting damages were caused by the negligence of the respondents. The negligence charged against the Canal Company was: (1) That it permitted the canal to remain in a condition unsafe and unfit for the passage of vessels. (2) That it permitted the Kathleen to be towed through the canal when it knew of its unsafe and unfit condition, or should have known it by the exercise of due diligence. (3) That it did not buoy or otherwise mark the rock or obstruction, or give warning of its presence.

That charged against the Transportation Company was: (1) That although its tugs towed numerous vessels through the canal, and it knew, or should have known by the exercise of due diligence, that said dangerous obstruction was in the water way, it piloted and towed the barge in such a manner that it ran against said obstruction. (2) That it took and piloted the barge through the canal under the dangerous conditions then existing.

The answer of the Canal Company denied negligence upon its part, and denied that it permitted its canal to remain in a condition unsafe and unfit for the passage of vessels, and that the canal was in such condition, and that it knew of said alleged unsafe and unfit condition, or should have known of the same by the exercise of due diligence, and that it was negligent in not marking the alleged rock or obstruction in the canal, or in not giving warning of the same.

It alleged that the canal was constructed and maintained without locks, and was open at both ends thereof, so that the tide freely flowed through the canal from and to the waters into which it opened; that at all times mentioned in the libel the canal was in a condition safe and fit for the passage of vessels, and that the channel was more than sufficiently deep to accommodate vessels of the draught of the Kathleen, and that such depth was constantly maintained in the channel; that the channel was free and clear of any and all obstructions dangerous to navigation, and that all sand bars, shoals, rocks, and other obstacles were properly marked and designated, and due warning was given of the same, and that the lines of the channel were duly and properly staked, marked, and designated by poles, spars, and other buoys, and that lights were placed at proper intervals along the channel, so that vessels going through the canal at night by the exercise of reasonable care in navigation could remain in the channel and navigate the same safely; that at the time of the alleged collision and alleged injury to

the barge there were no fixed obstructions, shoals, rocks, or other obstacles in the channel which were not properly marked and designated, and which could not be avoided by the exercise of reasonable care by vessels navigating the canal; that the respondent at all times exercised all reasonable means and due care to keep the channel and canal free and clear from any and all temporary obstructions and obstacles, such as floating or partially submerged logs, piles, or wreckage, which might drift into said canal with the tide, or which might otherwise be present in the canal, and which might be dangerous to navigation in said canal.

It further alleged that, if the damage as alleged in the libel occurred to the barge, the same was caused either (a) by reason of the barge striking a fixed rock, obstruction, or shoal outside of the duly designated and marked channel of the canal; or (b) if said damage as alleged in the libel occurred to the barge, the same was caused by the barge striking a temporary floating or partially submerged obstacle floating in said channel, and that the same was one of the ordinary and usual hazards of navigation, such as might have been encountered on the open sea, for which the respondent was in no way liable, having taken all reasonable and necessary means to prevent the existence of such temporary obstacles in the canal, and that the damage occurred without any fault or negligence on the part of the respondent.

The Transportation Company in its answer alleged that, if the barge sustained damages as a result of striking against some object in the canal while in tow of the tug, said damage was not due to any fault or neglect on the part of respondents, their agents, or servants, or of said tug, but was due to contact with some object, the presence of which was not known and should not have been known to it or those in charge of the tug.

Its answer also alleges that it was not a corporation, but, on the contrary, that its business was conducted by certain individuals named in its answer, who were trustees under a written agreement and declaration of trust, dated June 28, 1917, and as such were doing business under the name of New England Fuel & Transportation Company, and that as such they were and are doing business in Boston, in the district of Massachusetts, and that they maintained an office as such trustees in the city of New York.

Thereupon, on January 11, 1921, the trustees having duly appeared in the cause, an order was entered in the District Court which substituted them as respondents in the place and stead of the Transportation Company in all respects as if they had been originally named as respondents, and amending the libel in that respect, and directing that the answers theretofore filed should stand in all respects as if filed as so amended. The proctors for the trustees consented to the entry of the order.

The District Court, after the cause had been submitted upon the pleadings and proof, entered a decree in which it dismissed the libel as to the Transportation Company, and it ordered and adjudged that the libelants recover from the Canal Company the damage sustained, with interest and costs, and a commissioner was directed to ascertain the amount of the damages. Thereafter the proctors for the libelants and those for the Canal Company waived the reference to the commissioner and stipulated the amount of the damages as $23,547.17, and the interest on the various items of damage, which aggregated the further sum of $6,901.50, which, with the costs, made the aggregate amount of the decree $30,488.72; and a decree for that sum was accordingly entered, with interest thereon from the date of the decree.

The District Judge filed an opinion in which he stated the reason for holding the Canal Company liable. It is summed up in the following paragraph:

"The Canal Company has not offered any adequate explanation for a serious injury to a barge lawfully passing through its waters, and has not, therefore, in my opinion, sustained the burden of proof."

It appears that the Canal Company owns and operates a tidewater ship canal through Cape Cod, connecting the waters of Buzzard's Bay, on the west, with the waters of Cape Cod Bay, on the east, thus affording an inland route for vessels between points on Long Island Sound and points on and adjacent to Cape Cod Bay. At the point of accident the canal has a minimum width on the bottom of 100 feet, with a surface width of over 200 feet, and depth of from 25 to 30 feet at mean low water. Tolls are charged by the company for the privilege of allowing vessels to pass through.

On June 15, 1918, the tug Neptune, owned and operated by the Transportation Company, entered the western entrance of the canal, with the barges Kathleen and Scully Boys in tow. The place where the Kathleen encountered the hidden obstruction was at a point where the surface width of the canal

1 F. (2d)—16

was about 200 feet, the bottom width 100 feet, and the depth at mean low water 25 feet. The banks all along the canal were lighted by electric lights, distant 500 feet apart. The testimony of the master, mate, and deck hand of the tug was all to the effect that no obstruction had been noted by them, nor was any known to them to exist. The tug itself passed safely over that identical spot, and the Scully Boys, a few feet to the stern of the Kathleen, passed over without striking.

Prior to the damage to the Kathleen, the tug and Scully Boys had passed through the canal and over the same spot an average of five or six times a week continuously, towing barges, loaded and light, of the same size as the Kathleen, and such trips were made without incident. After the accident complained of, soundings were made at and around the point where the accident occurred, and no obstruction of any nature or description was found to exist. At both entrances to the canal, docks, wharves, and other structures not owned or controlled by the Canal Company exist. The canal is sea level, tidewater, with no gates or locks. Floating débris may possibly pass through the canal with the tide, including partially submerged, water-logged piles and dolphins. These being the facts as disclosed in the record, we come to a consideration of the law applicable thereto.

[1, 2] A canal is a navigable public highway of a peculiar kind, and it is not made otherwise by the fact that it is operated by a private company, which exacts tolls from those making use of it; and where a company maintains for its own profit a canal, which is open to public navigation on payment of tolls, it is not subject to the responsibilities of insurers. Gibbs v. Liverpool Docks, 3 H. & N. 164; Riddle v. Merrimack River Locks, etc., 7 Mass. 169, 5 Am. Dec. 35, Pennsylvania Canal Co. v. Burd, 90 Pa. 281; Steele v. Western Inland Lock Navigation Co., 2 Johns. (N. Y.) 283; Watts v. Savannah, etc., Canal Co., 64 Ga. 88, 37 Am. Rep. 53; James River, etc., Co. v. Early, 13 Grat. (54 Va.) 541.

The question of a canal company's liability for injuries suffered by a boat navigating a canal for the navigation of which the company exacted tolls was heard in the Exchequer Chamber in 1839. Chief Justice Tindal, in giving the opinion of the court, said that the facts "show that the company made the canal for their profit, and opened it to the public upon the payment of tolls

to the company, and the common law, in such a case, imposes a duty upon the proprietors, not perhaps to repair the canal, or absolutely to free it from obstructions, but to take reasonable care, so long as they keep it open for the public use of all who may choose to navigate it, that they may navigate without danger to their lives or property." Parnaby v. Proprietors of the Lancaster Canal Company, 11 Ad. & E. 223.

In Mersey Docks Trustees v. Gibbs, 11 H. L. Cas. 687, a case decided in 1866, the principle involved in cases of this nature was fully and ably considered. In that case the dock was, by reason of accumulations of mud, unfit to be used by ships. The trustees of the docks knew of the condition, but did not take due and reasonable or any care to put the dock in a fit state, but negligently suffered it to remain in an unfit state and to be used by vessels. Actions had been brought to recover damages for injury to the cargo and to the ship occurring while the vessel was endeavoring to enter the dock. There were two cases, one of which was tried before Lord Chief Justice Pollock, who directed the jury that if, in their opinion, the cause of the injury to the ship was a bank of mud at the dock, and that the defendants, by their servants, had the means of knowing the state of the dock, and were negligently ignorant of it, they were liable in damages. It was claimed that this instruction was error, and that the jury ought to have been charged that, if the cause of the misfortune was a bank of mud at the entrance of the dock, the defendants were not liable, unless they or their servants knew that the entrance was, by reason of the said bank of mud, in an unfit state to be navigated, or knew that it was in a dangerous condition for ships navigating the same. The Exchequer Chamber sustained the Lord Chief Baron's charge, and the House of Lords affirmed the Exchequer Chamber. It was thought the Lancaster Canal Company Case, supra, was controlling. Lord Chancellor Cranworth in his opinion said:

"The only difference between that case and those now standing for decision by your Lordships is that here the appellants, in whom the docks are vested, do not collect tolls for their own profit, but merely as trustees for the benefit of the public. I do not, however, think that this makes any difference in principle in respect to their liability. It would be a strange distinction, to persons coming with their ships to different ports of this country, that in some ports, if they sustain damage by the negligence of those

who have the management of the docks, they will be entitled to compensation, and in others they will not; such a distinction arising, not from any visible difference in the docks themselves, but from some municipal difference in the constitution of the bodies by which the docks are managed."

In 1863 a case came before the Superior Court of the City of New York, which has been frequently cited since. In Exchange Fire Insurance Co. v. Delaware & Hudson Canal Company, 10 Bosw. 180, a canal boat navigating the defendant's canal struck against a stone in the bottom of the canal, and with its cargo was injured and sunk. The same boat had made previous trips in safety during the same season, one of which was about a week before the accident. It was not claimed that there was not water enough in the canal for safe navigation, if the stone had not been there. The stone which was the cause of the injury was over a foot and a half thick, of irregular shape, and split or sledged off on one side. There was no evidence that the defendant, through any of its agents, knew that the stone was in the canal. It was argued that it was the duty of the defendant to use reasonable care to keep the canal in a condition suitable for navigation, that at the time of the accident it was not in such a condition, and that this was enough to raise a presumption of negligence, and shifted the burden of proof. The court held the defendants not liable, inasmuch as they had no knowledge that the stone was in this canal, and that the sinking of the boat on the stone was not owing to any fault or negligence of the defendants. In the course of the opinion the court said:

"The only question of law in this case seems to be the extent of the obligation of the defendants to keep their canal free from obstructions. If, like common carriers, they are bound to insure the navigators on such canal against all accidents from unforeseen causes, and which human foresight could not reasonably have guarded against, the defendants would be responsible. If they are only obliged to use reasonable diligence, and take reasonable precautions to prevent accidents, it then becomes a question of fact whether they did so in this case. The canal, like a highway or railroad, if used by others, is a mere instrument of use and profit belonging to the defendants, which they are bound to keep in proper order for use. If they tempt the public to use it, and neglect proper precautions to make it navigable and safe, they are undoubtedly liable for damages for such neglect. * * * And the

rule is of universal applicability to individuals, as well as public bodies, that they who induce others to make use of an instrument or article belonging to them, for a particular purpose, they retaining its possession, are bound to be innocent of all negligence in keeping it in a proper condition to be used * * * at the peril of being responsible for damages.

"But there is no consideration of public policy to enlarge the liability of the owners of a canal beyond the employment of reasonable diligence. Unless they owned the canal boats, they could reap no benefit from either the simulated or real destruction of them or their cargoes, and therefore there is no reason for putting them on a footing with common carriers, so as to render them insurers. No case has been cited which goes this length. * * * One thing is very clear, that, the stone being covered by water, there was no notice of its presence until something came in contact with it. It would be unreasonable to require the defendants to sound and drag the whole length of their canal perpetually, to ascertain what obstructions might lie at the bottom, or to keep guards along the banks to prevent the commission of injuries by designing persons."

In Carleton v. Franconia Iron & Steel Co., 99 Mass. 216, the owner of a wharf procured a vessel to bring a cargo to it to be there discharged, and suffered her to be placed there, at high water, over a rock sunk and concealed in the adjoining dock. He had long known of the position of the rock, and that it was dangerous to vessels, but gave no notice to any one connected with the vessel. Without negligence on the part of any one connected with the vessel, the boat settled down upon the rock with the ebb tide and was bilged by it. The court held the owner of the wharf liable. Mr. Justice Gray (afterwards of the United States Supreme Court) laid down the principle as follows: "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist, and has given them no notice of."

In Nickerson v. Tirrell, 127 Mass. 236, 239, the law was laid down as follows: "The general rules of law applicable in cases of this character are well settled. The owner or occupant of a dock is liable in damages to a person who, by his invitation, express

or implied, makes use of it, for an injury caused by any defect or unsafe condition of the dock, which the occupant negligently causes or permits to exist, if such person was himself in the exercise of due care. Such occupant is not an insurer of the safety of his dock, but he is required to use reasonable care to keep his dock in such a state as to be reasonably safe for use by vessels which he invites to enter it, or for which he holds it out as fit and ready. If he fails to use such due care, if there is a defect which is known to him, or which by the use of ordinary care and diligence should be known to him, he is guilty of negligence and liable to the person who, using due care, is injured thereby."

In Boston, Cape Cod & New York Canal Co. v. T. A. Scott Co., 251 Fed. 356, District Judge Morton, speaking of the respondent herein, said: "The canal is one of the well-known waterways on this part of the coast. Competent navigators may be assumed to be familiar with its general characteristics. It is a narrow channel, of no great depth, in which at times heavy tidal currents exist. The Canal Company does not guarantee the safety of vessels using the canal; its obligations are not to misrepresent what it offers, and to use reasonable care for the safety of vessels which accept its offer and avail themselves of the canal."

In Boston, Cape Cod & New York Canal Co. v. Staples Transportation Co., 246 Fed. 549, 552, 158 C. C. A. 519, a tug and barge passing through this same canal were injured by an obstruction in the canal, the existence of which was unknown to any one taking part in getting the boats through the canal. The obstruction was under water, unmarked in any way, and invisible. It was not one of recent origin, or accidental or temporary in its nature. It was a permanent obstruction, which had been left in the bottom when the canal was dug. It consisted of a shoal extending about 25 feet up and down the canal, and about 41 feet from its northerly bank at low water. It had near its end, farthest from the bank, a sharp, rocky peak, not over 7 feet below the surface at low water. The rocky peak caught the tug's bilge, and so damaged her bottom as to make her fill and sink. The Canal Company was held liable in the court below and in the Circuit Court of Appeals. The latter court said: "We are, nevertheless, of opinion that it [the Canal Company] has not excused its confessed ignorance of the existence of the obstruction which caused this accident. The evidence satisfies us, as it did the learned District Judge, that the obstruction was one not removed from the bottom, as it ought to have been, when the canal was dredged."

In Shearman & Redfield on Negligence (6th Ed.) vol. 2, § 399, the rule is stated as follows: "Private persons or corporations, who own or operate a canal which they invite the public to use upon the payment of tolls, are bound, so long as they keep it open, to exercise ordinary care to keep it in such repair that it may be navigated with safety, but no more than ordinary care is required."

In 9 C. J. 1146, the rule is stated as follows: "A company maintaining for its own profit a canal open to public navigation on payment of tolls is bound to take reasonable care that it may be navigated without danger. Canal companies are not liable, however, for accidents which do not arise from the want of reasonable care, for, unlike common carriers, they are not subject to the responsibilities of insurers. Where accidents result from hidden obstructions in a canal, as rocks, sunken logs, etc., no liability exists against the canal company, if the existence of such obstructions was unknown, and reasonable care has been exercised in the supervision of the canal. But a canal company is liable for negligence where it allows such obstructions to remain in the channel of the canal and damage results."

And in 5 Cyc. 123, it is said: "A company, maintaining for its own profit a canal open to public navigation on payment of tolls, is bound to take reasonable care that it may be navigated without danger. Canal companies are not liable, however, for accidents which do not arise from the want of reasonable care, for, unlike common carriers, they are not subject to the responsibilities of insurers."

[3, 4] The court below based its decision in this case upon the fact that the Canal Company had not sustained the burden of proof which he thought rested upon it. "The burden" imposed upon the Canal Company, he says, "of explaining a serious injury to the bow and bottom of the barge, is sought to be sustained by the contention that it was caused by some floating object so submerged that it was not visible on the surface." And again he says: "The Canal Company has not offered any adequate explanation for a serious injury to a barge lawfully passing through its waters, and has not, therefore, in my opinion, sustained the burden of proof." We think the theory upon which the court proceeded was erroneous. Inasmuch as the Canal Company is not an insurer that its canal is at all times in such

condition as to render navigation thereon safe, and as it is only subjected to the duty of taking reasonable care that those allowed to navigate it may do so without danger, the burden of proof is on libelants to show a breach of this duty.

The libelant, as pointed out, charged the Canal Company with negligence, because it permitted the canal to *remain* in a condition unsafe and unfit for the passage of vessels. But there is not the slightest support in the evidence for any of these allegations. The Canal Company certainly did not "permit" the canal to "remain" in an unsafe and unfit condition; for it was without knowledge up to the time of the accident that such a condition existed. And in view of the fact that numerous vessels passed through the canal and over the identical spot where the Kathleen encountered the obstruction, and on the same day and night, and without hindrance or damage of any kind, although a number of the vessels were larger and drew more water than the Kathleen, it would seem to be a reasonable and permissible conjecture that the Kathleen struck a partially submerged, heavy, floating object, which passed out of the canal with the tide. Whatever may have been the obstruction, it clearly was not a permanent one. No one saw it, or knew of the existence of any obstruction at that point, until the accident, and although, after the accident, careful soundings were made, no indications of any obstruction could be found. This burden of showing negligence, or want of due care, on the part of the respondent, the libelants, in our opinion, did not sustain.

This is not a case where the facts proved made out a presumption of negligence. This is not like a case of the fall of a building, a scaffold, or an elevator, or of a gangway plank. On such a state of facts the presumption may well be that the duty of exercising due care has not been exercised. In the ordinary course of things, such an accident does not happen if those who have the management use proper care, and the mere fact of the accident affords reasonable evidence in the absence of explanation that the accident arose from a want of care.

In the instant case the accident was caused by an obstruction. The evidence does not disclose what that obstruction was. No one ever saw it, or knows from whence it came, or whither it disappeared. Whatever it may have been, it was not an obstruction placed in the canal by the respondent, and its presence in the canal was not known to any one until the accident happened. What pos-sible precautions against its sudden appearance in the canal could the respondent have taken, and failed to take? Unless the respondent failed to take some precaution, which it was its duty to take, there is no liability. Unless the libelants can point out that the respondent could have prevented this accident, if it had taken such reasonable precautions, as it was its duty to take, there is no liability. The libelants have failed to show that the respondents omitted to do something which they were bound to do, and which, if they had done it, this accident would not have happened.

[5] The burden of proof rests upon the libelants, whose duty it is to establish by a preponderance of evidence the facts upon which the right to recover rests. The burden of proof never shifts, although the burden of evidence may. In a case such as the one now before the court, the libelants are not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to themselves. If they have done this, they are entitled to recover, unless the respondent has produced evidence sufficient to rebut the presumption. Pennsylvania Canal Co. v. Bentley, 66 Pa. 30; Kendall v. Boston, 118 Mass. 234, 19 Am. Rep. 446; Sullivan v. Union R. Co., 7 App. Div. 238, 40 N. Y. Supp. 84; Shearman & Redfield on Negligence (6th Ed.) vol. 1, § 58. It does not seem to us that such evidence as the libelants have adduced is sufficient to raise any presumption of negligence against the Canal Company, the canal being a sea level, tidewater canal, without locks or gates, through which the tide ebbs and flows, just as it ebbs and flows along the coast. No evidence has been produced which shows any permanent or fixed obstruction at the place where this injury occurred. If there had been any such evidence, we should have had a different question before us from the one which this case now presents. As the burden of proving negligence rested upon the libelants, and they failed to prove any negligence, the libel should have been dismissed.

The evidence all points to the fact that no fixed obstruction existed, and the only reasonable conclusion is that a floating and partially submerged object, passing through the canal with the tide, struck the Kathleen and was subsequently carried out of the canal by the tide. The situation seems to us, as it did to the appellant's proctor, to be analogous to that of a department store merchant, who invites the public to come in and buy his wares and merchandise. He undertakes only

that the premises where such merchandise is exposed for sale are safe, that he has used reasonable care in making and keeping them so, and that he knows of no fact which would render them unsafe. He does not insure that the air, passing through his premises and coming from the outside through nature's currents, shall enter free from disease germs; and should a customer enter his premises for the purposes of trade, and therein come in contact with disease germ laden air, resulting in his damage, it is perfectly obvious that no liability would rest upon the department store owner. If there is no liability upon the department store owner under the circumstances suggested, neither is there any upon the Canal Company under the circumstances herein disclosed.

The decree is reversed, with costs to the appellant.