## SILVER SPRINGS PARADISE CO. v. RAY et al.

### No. 6120.

Circuit Court of Appeals, Fifth Circuit.

June 1, 1931.

Rehearing Denied July 6, 1931.

Henry P. Adair, of Jacksonville, Fla., Robert L. Anderson, Jr., of Ocala, Fla., and John M. McNatt, of Jacksonville, Fla. (R. L. Anderson, Jr., of Ocala, Fla., H. P. Adair, of Jacksonville, Fla., Anderson & Anderson, of Ocala, Fla., and Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., on the brief), for appellant.

H. L. Anderson, of Jacksonville, Fla., and H. M. Hampton, of Ocala, Fla., for appellees.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By this suit the appellees asserted the claims that, by reason of their ownership of land beneath the waters of Silver Springs, a

body of water located in Marion county, Fla., and of an established business of operating glass-bottom boats for the purpose of carrying persons for hire over those waters and showing the waters and bed of Silver Springs, they have the exclusive right to operate such boats over those waters for hire and for the purpose mentioned, and the right to prevent the appellant, which owns a tract of land on Silver Springs river or run, the outlet of Silver Springs, about three-fourths of a mile east or southeast of the head of Silver Springs, on which is located appellant's place of business, called Paradise, from maintaining at the intersection of the Ocala and Daytona Highway with the road leading to the place known as Paradise, signboards or signs containing the word or words "Silver Spring" or "Silver Springs," and from using the name "Silver Springs" as a part of its name in advertising its place of business at Paradise. Following a hearing on the bill, answer, and exhibits, affidavits, photographs, and other documents, on application of appellees for a temporary injunction, the court sustained the above-mentioned claims asserted by the appellees by a decree granting such an injunction, and by a decree denying a motion to dissolve that injunction. The case is before us on appeals from those decrees.

There is no dispute as to the facts which we consider to be controlling in the determination of the questions raised by the record. At the above-mentioned location in Marion county, Fla., there is a large natural basin containing a number of springs which create the body of water called Silver Springs, which discharges through Silver Springs run or river into the Oklawaha river, a tributary of the St. Johns river, which discharges into the Atlantic Ocean. The stream so formed in its natural and ordinary condition is susceptible of being used for commerce, over which trade or travel may be conducted in the customary modes of trade and travel on water from its head or source as a highway by water craft of all kinds having not exceeding six feet draft, and continuously has been susceptible of being so used. The water over the springs which feed that body of water called Silver Springs varies in depth up to eighty feet, and that water is clear, transparent, and beautiful. The bed of that body of water, the caverns and crevices from which the contributing springs issue, the rock formations in the bed, the vegetation growing thereon, and living creatures clearly visible in the waters, are beautiful and interesting, with a result

that the place is attractive to visitors. Pursuant to provisions of an act of Congress passed in 1823 (3 Stat. 754), public lands including the territory in which Silver Springs is located were surveyed and opened to sale. That act contained the provision: "That all the navigable rivers and waters in the districts of East and West Florida shall be, and forever remain, public highways." Section 12. Under the survey and plat made of public lands, Silver Springs is partly in the northeast quarter of the southeast quarter of section 6, in township 15 south of range 23 east, in the district of land which was subject to sale at Newnansville, Fla., and partly in the southeast quarter of that quarter section, and the two land subdivisions which include Silver Springs contain seventy-nine acres and one-hundredth of an acre. About ten acres included in those two subdivisions are permanently covered by the waters of Silver Springs, the flow from which amounts to more than three hundred millions gallons of water a day.

On February 24, 1845, while Florida was a territory, James Rogers made a cash entry of the above-mentioned subdivisions of land and paid therefor the sum of $98.75 for seventy-nine acres and one-hundredth of an acre at $1.25 per acre, and received the receiver's receipt showing such payment for that land. On July 1, 1848, after Florida became a state, a patent for that land was issued to James Rogers. By mesne conveyances appellees succeeded to the title so acquired by James Rogers. For many years appellees' predecessors in title and appellees have paid taxes on the land described in said patent including the part thereof which is beneath the waters of Silver Springs. For many years appellees and their predecessors in title have operated glass-bottom boats over Silver Springs, by means of which Silver Springs and what is beneath the surface of that body of water, including the living creatures therein, are displayed for hire. Appellees have extensively advertised that business, and derive a substantial profit from it. A short time before the date of the filing of the bill in this case, the appellant acquired the above-mentioned tract of land on which it located its place of business called Paradise, and began the operation of a rival glass-bottom boat business, showing for hire Silver Springs and part of the stream into which the waters of Silver Springs are discharged and what is beneath the surface of those waters. For many years prior to 1925 boats carrying passengers and freight were operated

from and to points on the Oklawaha and St. Johns rivers to and from the head of Silver Springs, where there were warehousing and docking facilities. At or near the head of Silver Springs is a settlement, also called Silver Springs, at which the United States maintains the Silver Springs post office.

Under above-indicated undisputed evidence it is not open to question, and it is conceded by counsel for appellees, that the body of water called Silver Springs, including the water which submerges part of the land included in the description contained in the land patent under which appellees deraign title, is navigable from its head or source. United States v. Holt State Bank, 270 U. S. 49, 56, 46 S. Ct. 197, 70 L. Ed. 465; United States v. Utah, 51 S. Ct. 438, 497, 75 L. Ed. ——, April 13, 1931. The parties advance conflicting contentions as to whether the appellees, as successors in title to James Rogers, the patentee, did or did not acquire any title to that part of the land included in the description contained in the patent which is submerged by the waters of Silver Springs; it being contended in behalf of the appellees that the patent was effective to convey title to all the land included by the description contained therein, and counsel for the appellant contending that, because, at the time of the entry and purchase in pursuance of which that patent was issued, the United States held in trust for the state to be created the title to the beds of all navigable waters within the territory which became the state of Florida, the patent was not effective to convey to the patentee, an ordinary purchaser of public land for private use, any title to or estate in that part of the land described in the patent which is under the navigable waters of Silver Springs. United States v. Holt State Bank, supra; Shively v. Bowlby, 152 U. S. 1, 47, 48, 14 S. Ct. 548, 38 L. Ed. 331. The United States, at the time of the patentee's entry and payment for the land described in the patent, being vested, as to that land, with the rights and power of both sovereign and proprietor, it seems that the patent conveyed to the patentee some title to or right of ownership in the part of that land which is covered by navigable water. Goodtitle v. Kibbe, 9 How. 471, 478, 13 L. Ed. 220; Shively v. Bowlby, supra; Brewer-Elliott Oil & Gas Co. v. United States, 260 U. S. 77, 43 S. Ct. 60, 67 L. Ed. 140; United States v. Holt State Bank, supra; Kneeland v. Korter, 40 Wash. 359, 82 P. 608, 1 L. R. A. (N. S.) 745; Hewitt-Lea Lumber Co. v. King County, 113

Wash. 431, 194 P. 377, 21 A. L. R. 201. But if the title, if any, so conveyed must have been such a one as could furnish no support for any claim asserted by this suit, with the result that the decision of the questions raised by the record would be the same, whether that title did or did not exist, it is not material to determine whether the patent did or did not convey to the patentee any title to the submerged part of the land included in the description contained in the patent.

As the statute under which the patented land was offered for sale and sold contained the above set out provision as to all navigable waters being and forever remaining public highways (that provision being to the same effect as one contained in 43 USCA § 931), it is to be inferred that it was intended that no patent issued under that statute should affect the right of the public to use as a highway navigable waters covering lands included in the description contained in the patent. St. Paul & P. Railroad Co. v. Schurmeier, 7 Wall. 272, 289, 19 L. Ed. 74.

Even in the absence of such a statutory provision the title which an owner of highland contiguous to a navigable stream or body of water may have in land covered by such water is at best a qualified or restricted one. "Whatever the nature of the interest of a riparian owner in the submerged lands in front of his upland bordering on public navigable water, his title is not as full and complete as his title to fast land which has no direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute disposal, as is his upland, but to be held at all times subordinate to such use of the submerged lands and the waters flowing over them as may be consistent with or demanded by the public right of navigation." Scranton v. Wheeler, 179 U. S. 141, 163, 21 S. Ct. 48, 57, 45 L. Ed. 126; United States v. Chandler-Dunbar Water Power Co., 229 U. S. 53, 64, 33 S. Ct. 667, 57 L. Ed. 1063; Lewis Blue Point Oyster Cultivation Co. v. Briggs, 229 U. S. 82, 89, 33 S. Ct. 679, 57 L. Ed. 1083; United States v. Cress, 243 U. S. 316, 37 S. Ct. 380, 61 L. Ed. 746. It follows that if appellant, in operating for hire glass-bottom boats on and over the navigable waters of Silver Springs, was exercising the public right of navigation, and the maintenance of the asserted claim of the appellees that they had the exclusive right of operating for hire such boats on and over those waters would be inconsistent with the exercise by appellant of

the public right of navigation, it is not material to determine whether appellees do or do not possess such qualified or limited title to land covered by those waters as is capable of being acquired in private ownership.

The public right of navigation entitles the public generally to the reasonable use of navigable waters for all legitimate purposes of travel or transportation, for boating or sailing for pleasure, as well as for carrying persons or property gratuitously or for hire, and in any kind of water craft the use of which is consistent with others also enjoying the right possessed in common. As to that right a riparian owner, though he also has a qualified or bare technical title to the soil covered by the navigable water opposite his upland, is entitled to no preference or priority, his right in that regard being only concurrent with that of other members of the public, and to be exercised in a way not inconsistent with the enjoyment of the same right by others. He cannot, any more than can one who has no title to riparian or submerged land, acquire an exclusive right to use navigable water opposite his upland for travel or navigation for purposes of business or of pleasure or diversion. Merrill-Stevens Co. v. Durkee, 62 Fla. 549, 57 So. 428; Ferry Pass. I. & S. Ass'n v. White River I. & S. Ass'n, 57 Fla. 399, 48 So. 643, 22 L. R. A. (N. S.) 345; Broward v. Mabry, 58 Fla. 398, 50 So. 826, 828; Apalachicola Land & D. Co. v. McRae, 86 Fla. 393, 98 So. 505; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 Am. St. Rep. 541, 551; State v. Columbia Water Power Co., 82 S. C. 181, 63 S. E. 884, 22 L. R. A. (N. S.) 435, 129 Am. St. Rep. 876, 882, 17 Ann. Cas. 343; Heyward v. Farmers' Mining Co., 42 S. C. 138, 19 S. E. 963, 20 S. E. 64, 28 L. R. A. 42, 46 Am. St. Rep. 702; Smart v. Aroostook Lumber Co., 103 Me. 37, 68 A. 527, 14 L. R. A. (N. S.) 1083; Monroe Mill Co. v. Menzel, 70 L. R. A. note, 277; Sanborn v. People's Ice Co., 82 Minn. 43, 84 N. W. 641, 51 L. R. A. 829, 83 Am. St. Rep. 401; 45 C. J. 447, 559; Farnham on Waters, 130, 131.

In operating glass-bottom boats on the navigable waters of Silver Springs the appellees exercised, not a right which accrued to them by reason of their ownership of upland contiguous to those waters or of land beneath them, but the right of navigation which they possessed concurrently with the public generally. Having no exclusive right to use those waters for travel or transportation, appellees were not entitled to prevent the use of them by appellant in any way in which the public right of navigation reasonably may be exercised. In carrying passengers for hire in glass-bottom boats over those waters appellant exercised the public right of navigation, and by so doing did not violate any right possessed by the appellees. Having the right to use the waters of Silver Springs for purposes of travel for business or pleasure, and to transport persons thereon for or without compensation, the appellant and those transported by it had, as an incident of the right so to travel, the right to view the waters traversed and what was visible beneath the surface of those waters; and appellant was at liberty to provide facilities, to which others had no exclusive right, for displaying to persons carried the waters traversed, the vegetable growths and living creatures therein and the submerged land. The appellant was none the less engaged in exercising the public right of navigation by reason of the fact that it used glass-bottom boats and received pay from passengers for the sight-seeing advantages incident to travel in such boats. The fact that the waters of Silver Springs are navigable keeps the appellees from being entitled to the monopoly or exclusive right they claim.

Appellees' bill as it was amended contained allegations as to signboards erected and maintained by appellant at or near the intersection of the Ocala and Daytona Highway, which passes near the head of Silver Springs, and the road leading from that highway to Paradise, appellant's location; and appellant's original answer contained allegations as to signboards erected and maintained by the appellees. It was disclosed that all the signs above referred to were removed while the suit was pending and before the hearing on the above-mentioned motion to dissolve the injunction granted by the court. An amendment of appellant's answer, after alleging that all said signs had been removed, alleged:

"And this defendant, unless enjoined and restrained by order of this Court, will install and thenceforward maintain at or near the intersection of said Paradise road with said Ocala-Daytona Highway, one or more signs bearing substantially the following words and figures, or words and figures of similar import, to-wit:

"Turn Right for Paradise Landing

"On Silver Springs River or Run.

"There take Glass Bottom Boat Trip up the Run to its Head and over all of the Silver Springs."

It is to be inferred that appellant has abandoned any claim of right to use the name or words "Silver Springs" otherwise than as indicated by the just setout allegations. Silver Springs and Silver Springs run or river being the geographical names of a body of water and of the stream into which it discharges, those names are not subject to be exclusively appropriated as trade-names or as designations of one's business or products. The words "Silver Springs," used in connection with the locality in question, constitute merely geographical names of a body of water, of the stream which is its outlet, and of a particular settlement and post office. Names which are merely geographical are not subject to be exclusively appropriated as trade-marks or trade-names. Baglin v. Cusenier Co., 221 U. S. 580, 593, 31 S. Ct. 669, 55 L. Ed. 863; Wyatt v. Mammoth Cave Development Co. (C. C. A.) 26 F.(2d) 322. Appellees are not entitled to have another or others forbidden to use those words to designate the things the names of which, in whole or in part, are "Silver Springs." The injunction granted in effect forbids the appellant to call a body of water, a stream, and a settlement by the identifying names by which they are known and designated, though in using such names appellant does nothing to mislead any one or in any way to misrepresent facts. The use by the appellant in its name or business of the merely geographical name "Silver Springs" would not properly be subject to complaint by appellees, if in so using that name appellant or its business were so identified as to be readily distinguishable from appellees or their business, so that no confusion or deception could be caused. No right of the appellees would be infringed by the erection and maintenance of a sign containing directions as to the route to be taken to reach appellant's location on Silver Springs run or river, that sign containing nothing calculated to deceive any one into believing that in patronizing appellant he was patronizing the appellees.

The injunction granted is not sustainable, as it forbade the doing by the appellant of things it was entitled to do.

The decision that the court erred in decreeing that defendant (appellant here) be enjoined from maintaining, at the intersection of the Ocala and Daytona Highway with the road mentioned, signboards or other signs containing the name or words Silver Springs or Silver Spring, and from using the name Silver Springs as a part of its name in advertising its business at Paradise, is not to be understood as having the effect of approving the use by the appellant of the name Silver Springs in any way that would be calculated to cause deception or confusion, or to induce anyone to believe that appellant's sight-seeing excursion is the one advertised by the appellee.

Because of the above-indicated error, the decrees appealed from are reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.