## DESPER v. STARVED ROCK FERRY CO.
### No. 10257.

United States Court of Appeals
Seventh Circuit.

March 20, 1951.

Rehearing Denied May 14, 1951.

Thomas C. Angerstein, George W. Angerstein and Charles T. Shanner, Charles Wolff, all of Chicago, Ill., for appellant.

Joseph D. Ryan, Chicago, Ill., George L. Herbolsheimer, La Salle, Ill., Louis G. Davidson, Louis P. Miller, Chicago, Ill., for appellee.

Before KERNER, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

This is an action under the Jones Act, 46 U.S.C.A. § 688, for damages for the death of plaintiff's intestate, Thomas J. Desper, Jr., as a result of injuries sustained by him in the course of his employment by defendant. A jury found for plaintiff, assessing her damages at $25,000. From the judgment entered on the verdict, defendant appeals.

Defendant is an Illinois corporation engaged in the operation of sight-seeing motor-boats on the Illinois River in the vicinity of Starved Rock. Plaintiff's intestate was first employed by defendant in April, 1947. He assisted in the preparation of the latter's motor launches and barges for the summer season, which extended from June 1 to the end of October, and, after procuring, on June 17, 1947, a Department of Commerce license "to operate or navigate motor boats carrying passengers for hire", served as an operator of defendant's launches for the balance of the 1947 season. Defendant had five such vessels, manned by licensed crewmen

and operated pursuant to Coast Guard regulations. At the close of the season, Desper helped take the boats and barges off the river and prepare them for the winter. The barges, none of which had any motive power, were floated into a shallow inlet known as Edwards Run, which was utilized by defendant as winter quarters, and there anchored to the bank; the motor launches were taken out of the water and blocked up on marine tracks on land adjacent thereto. This work was completed and Desper's employment terminated on December 19, 1947.

On March 15, 1948, Desper again entered defendant's employment. Although there was testimony to the effect that he was hired for the season and was to be employed as an operator once the boats were in the water, the work he actually performed from the date of his reemployment until his death consisted of cleaning, painting, varnishing and water-proofing the vessels and engaging in various other related activities necessarily involved in readying them for the summer season. On April 26, the date on which the accident occurred, the launches were still blocked up on rails and the barges lying in Edwards Run. The largest of the latter was a houseboat in which defendant's manager had year-round living quarters and which was also used as a machine and tool shop, warehouse, ticket office and waiting room. Five or six men were on this barge, spraying life preservers which were to be used on the sight-seeing boats, and defendant's president, one Birkenbuel, was also there, working on a fire extinguisher. This extinguisher exploded, killing Birkenbuel and plaintiff's intestate.

Both plaintiff and defendant filed applications for adjustment of claim with the Industrial Commission of Illinois, the defendant on January 6, 1949, and the plaintiff on March 28, 1949, seven days after filing her complaint in the instant action in the District Court. After hearing, an arbitrator decided that the provisions of the Illinois Workmen's Compensation Act were applicable and that under Section 7 (b) thereof, Ill.Rev.Stat. 1949, Ch. 48, Sec. 144(b), plaintiff was entitled to compensation in the amount of $19.50 per week for 266 weeks and $13 for one additional week. Defendant's tender of the amount of compensation which had already accrued and its offer to pay the balance of the award were immediately rejected by plaintiff, who filed with the commission a petition for review, alleging that the commission lacked jurisdiction and praying that the order be vacated. The pendency of this petition for review was urged by defendant in support of its motion to stay the proceedings in the instant case,—a motion predicated on its contention that the commission's decision, subject to review by the courts of Illinois, would be determinative of plaintiff's right to the relief prayed. The District Court, however, overruled the motion and the suit proceeded to judgment as related.

It is defendant's position that plaintiff's intestate, Desper, was not a "seaman" within the meaning of the Jones Act and that plaintiff, therefore, has no right to maintain an action for damages for his death in the course of his employment, but has available to her only the remedy afforded by the Illinois Workmen's Compensation statute. It is urged that the District Court erred in taking the contrary position and, more particularly, in denying defendant's motion for a stay, in refusing to direct a verdict for defendant, in giving certain instructions submitted by plaintiff and failing to give an instruction offered by defendant, and in overruling defendant's motion for judgment notwithstanding the verdict.

The Jones Act, 46 U.S.C.A. § 688, provides that "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman

may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable." Jurisdiction in such actions lies in the court of the district in which the defendant employer resides or in which his principal office is located. The language employed makes it readily apparent that the benefits of the Act are available only to (1) a "seaman" who has been injured in the course of his employment or (2) "the personal representative of such seaman", in the event the injuries received result in his death, and that the crucial question presented on this appeal is whether Desper, the plaintiff's intestate, was a "seaman" within the meaning of the Act, so as to confer on his personal representative the right to maintain this action.[1] Both parties, however, have advanced arguments which tend to broaden this issue, defendant contending that the fatal accident occurred on non-navigable waters, apparently on the theory that this fact, if true, precludes the maintenance of plaintiff's suit under the Jones Act, and plaintiff urging that the 1939 Amendment to the Federal Employers Liability Act, 53 Stat. 1404, 45 U.S.C.A. § 51, has so enlarged the meaning of the term "seaman", as used in the Jones Act, as to bring within its scope not only one who is "engaged in actual navigation" but also one who is engaged in "work so closely and substantially affecting navigation as to be a part thereof".

That it is wholly immaterial whether the fatal injury suffered by plaintiff's intestate was inflicted on navigable or non-navigable waters, is clear from the decision in O'Donnell v. Great Lakes Co., 318 U.S. 36, at page 39, 63 S.Ct. 488 at page 490, 87 L.Ed. 596, in which the Supreme Court, after observing that "there is nothing in the legislative history of the Jones Act to indicate that its words 'in the course of his employment' do not mean what they say or

that they were intended to be restricted to injuries occurring on navigable waters", concluded, 318 U.S. at page 42, 63 S.Ct. at page 492: "The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admirality jurisdiction over the suit depends *not on the place where the injury is inflicted but on the nature of the service* and its relationship to the operation of the vessel plying in navigable waters. * * *

"It follows that the Jones Act, in extending a right of recovery to the seaman injured while in the service of his vessel by negligence, has done no more than supplement the remedy of maintenance and cure for injuries suffered by the seaman, *whether on land or sea,* by giving to him the indemnity which the maritime law afforded to a seaman injured in consequence of the unseaworthiness of the vessel or its tackle." (Emphasis supplied.) In this case, then, plaintiff's right to recover is dependent on the status of the decedent rather than on the situs of the injury which resulted in his death; if Desper was a "seaman" within the meaning of the Jones Act, plaintiff is entitled to maintain this action irrespective of whether his death occurred on navigable or non-navigable waters or even on dry land; if he was not such a "seaman", she is not so entitled even though his death occurred on admittedly navigable waters, but is restricted to the remedy afforded by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Swanson v. Marra Brothers, Inc., 328 U.S. 1, 4–7, 66 S.Ct. 869, 90 L.Ed. 1045.

In considering plaintiff's contention that the 1939 Amendment to the Federal Employers' Liability Act broadened the meaning of the term "seaman", as used in the Jones Act, the history of that Act and related statutes and the decisions based thereon are enlightening. The Act was passed in 1920, subsequent to the Supreme Court's determination, in Chelentis v. Luckenbach Steamship Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171, that Section 20 of the Sea-

---

1. Defendant does not deny that Desper's death resulted from injuries sustained in the course of his employment, nor does it contend that, insofar as the question of negligence is concerned, the evidence was insufficient to sustain the verdict against it.

man's Welfare Act, 38 Stat. 1185,[2] effectuated no change in the general maritime law. The Act's express provision that a seaman injured in the course of his employment might, "at his election, maintain an action for damages at law", and the incorporation therein of "all statutes of the United States conferring or regulating the right of action for death in the case of railway employees", overcame the objection, expressed by the court in the Chelentis case, 247 U.S. at page 384, 38 S.Ct. at page 504, that the earlier legislation disclosed no intention "to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law", and effectively abolished the fellow-servant rule in cases where such election was exercised. In the Haverty case, International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, Congress' power to change the maritime law by making provision for such an election was recognized, and the court, in construing the act, held that, although for most purposes stevedores are not regarded as seamen, "in this statute 'seaman' is to be taken to include stevedores employed in maritime work on navigable waters * * *."

Less than a year after the decision in the Haverty case, Congress enacted the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., providing for the payment of compensation to an employee injured "upon the navigable waters of the United States", but expressly excluding from its coverage "A master or member of a crew of any vessel". In Frankel v. Bethlehem-Fairfield Shipyard, Inc., D.C., 46 F.Supp. 242, 249, affirmed 4 Cir., 132 F.2d 634, certiorari denied 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702, the court, holding that the Longshoremen's Act "necessarily limits the scope of 'seaman' in the Jones Act to a maritime employe who can be considered the master or member of the crew of a vessel", concluded that the plaintiff in that case

could not be classified as a seaman "as his duties had no direct relation to navigation". And in Swanson v. Marra Brothers, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045, the Supreme Court adopted the same construction, holding that "the effect * * of the Longshoremen's Act is to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the Haverty case only such rights to compensation as are given by the Longshoremen's Act." This decision clearly demonstrates that, since the passage of the Longshoremen's Act, the court has retreated from the position taken in the Haverty case and has narrowed the Jones Act concept of "seaman" to the point where it includes only one who is a member of the crew of a vessel plying in navigable waters.

Plaintiff, however, while contending that the evidence is sufficient to establish that the decedent was a member of the crew of a vessel and, thus, in any event, a "seaman" within the meaning of the Jones Act, takes the position that the 1939 Amendment to the Federal Employers Liability Act, 53 Stat. 1404, which provides that "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter", considered in conjunction with the Jones Act proviso that statutes "modifying or extending the common-law right or remedy in cases of personal injury to railway employees" shall apply in actions by seamen, has so broadened the concept of "seaman" as to bring within its scope one whose work "closely and substantially" affects navigation. Plaintiff's theory is that, because any employee of a carrier whose work substantially affects interstate commerce is covered by the

2. "In any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow-servants with those under their authority."

Federal Employers Liability Act, it follows that any employee whose work affects navigation is covered by the Jones Act. This position is, we think, unsound, for the Jones Act incorporates only those statutes "conferring or regulating the right of action for death in the case of railway employees" and the 1939 Amendment to the F. E. L. A. is not such a statute, for it is concerned only with the question of the coverage of the Act, with the determination of what "employees" are entitled to its benefits. It is, in short, nothing more than a definition of the term "employee" for the purposes of the F. E. L. A., and cannot reasonably be construed as a redefinition of the term "seaman", as used in the Jones Act.

Defendant contends that the trial court's first three instructions to the jury clearly reflect that court's adoption of the plaintiff's argument that the 1939 Amendment of the F. E. L. A., had the effect of broadening the Jones Act concept of "seaman", and that giving such instructions constituted reversible error. That defendant's contention is not without merit is best illustrated by the quotation of instruction number 1 which reads, in pertinent part:

"If you believe * * * that a duly licensed operator operating any one of the ferry boats of the defendant * * * during the regular season for such operation, was the crew of said vessel and engaged in actual navigation or in work which was so closely and substantially affected navigation as to be a part thereof, then the court instructs you that operation of said boats by a duly licensed operator * * * would constitute said operator a seaman within the meaning of the * * * Merchant Marine Act; and the court further instructs you that under such circumstances said operator is the crew of the ferry boat.

"The court further instructs you that if you believe * * * that the plaintiff's decedent * * * was employed by the defendant to operate its ferry boats as a licensed operator for the season of 1948, and commenced work * * * in March, 1948, aiding in the work of readying and fitting out defendant's said ferry boats * * * for operation on the Illinois River * * * and if you further find * * * that any part of the duties of * * * deceased * * * was the operation of one of said ferry boats as the crew of said vessel on navigable waters and that his work as such operator would be in actual navigation or in work which so closely and substantially affected navigation as to be a part thereof, then you should find that he was subject to the provisions of the Merchant Marine Act * * *."

Furthermore, inasmuch as this instruction is based upon that interpretation of the evidence which is most favorable to plaintiff, it presents the further question whether the court below erred, as defendant insists it did, in failing to find that such evidence was insufficient, as a matter of law, to constitute plaintiff's decedent a "seaman", and in denying defendant's motion for a directed verdict.

In Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 136, 50 S.Ct. 303, 74 L.Ed. 754, in Warner v. Goltra, 293 U.S. 155, 159–60, 55 S.Ct. 46, 79 L.Ed. 254, and again in South Chicago Co. v. Bassett, 309 U.S. 251, 256–257, 60 S.Ct. 544, 84 L.Ed. 732, the Supreme Court has pointed out that the legislative history of the Longshoremen's and Harbor Workers' Compensation Act leads to the conclusion that the term "master or member of a crew of any vessel", as used in that Act, is synonymous with the term "seaman", as used in the Jones Act. In Swanson v. Marra Brothers, 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045, decided in 1946, some seven years after the enactment of the F. E. L. A. Amendment on which plaintiff relies, the court not only reiterated this conclusion but went a step farther, stating that the effect of the Longshoremen's Act was to "confine the benefits of the Jones Act to the * * * crew of a vessel *plying in navigable waters*". (Emphasis supplied.) The phrase, "plying in navigable waters", is not we believe, to be construed as meaning that the vessel must, at the very moment of the injury, have been actually in motion on navigable waters, but is, rather, to be interpreted as meaning that the person injured must have been a member of the crew of a vessel

which was engaged in navigation as distinguished from one which had been withdrawn from navigation. In the case at bar, there was no vessel so engaged; all of defendant's boats and barges had been withdrawn from navigation for the winter and laid up in winter quarters, and until such time as they should once again be placed in service, they were not engaged in navigation and plaintiff's decedent, was not, therefore, a "seaman" within the meaning of the Jones Act—i. e., a master or member of the crew of a vessel engaged in navigation. Swanson v. Marra. Brothers, 328 U.S. 1, 7, 66 S.Ct. 869, 90 L.Ed. 1045. This conclusion finds support in the decisions rendered in Hawn v. American S. S. Co., 2 Cir., 107 F.2d 999, 1000, where the court, in affirming the trial court's direction of a verdict for the defendant in a case where the plaintiff was injured while employed with others in moving a vessel from one position alongside a dock to another at which it was taking on cargo for storage, stated that, although navigation "does not cease when the ship is in drydock for repairs, awaiting new business", a ship "is withdrawn from navigation, if laid up for the winter", and in Antus v. Interocean S. S. Co., 6 Cir., 108 F.2d 185, 187, where the court, affirming the dismissal of a suit filed under the Jones Act by one who had been a member of the ship's crew and was injured while helping prepare the vessel for winter quarters, stated: "The fact that he had been, or expected in the future to be, a seaman does not render maritime work which was not maritime in its nature." Cf. Taylor v. McManigal, 6 cir., 89 F.2d 583. Of the cases cited by the plaintiff, the only one which allowed a recovery under the Jones Act where the ship was not in actual navigation, Hunt v. United States, D.C., 17 F.Supp. 578, merely serves to emphasize the factors, lacking in the case at bar, which serve to make one a seaman for the purposes of the Act. In the Hunt case, the vessel on which the accident occurred was in drydock undergoing repairs and, thus, was not "withdrawn from navigation" as were the boats involved in the case at bar, which had been "laid up for the winter", Hawn v. American S. S. Co., 2

Cir., 107 F.2d 999, 1000. A second significant difference is that the plaintiff in that that case was living on board the vessel and was subject to ship's discipline as a member of the crew.

In the light of the foregoing authorities, we can conclude only that plaintiff's decedent was not, at the time of his death, a "seaman" within the meaning of the Jones Act and that the trial court erred in instructing the jury and in failing to grant defendant's motion for a directed verdict. Consequently, the judgment is reversed and the cause remanded with directions to enter judgment for defendant.