## McKIE v. DIAMOND MARINE CO.
### No. 14118.

United States Court of Appeals
Fifth Circuit.
May 6, 1953.

Rehearing Denied June 2, 1953.

133

Hutcheson, C. J., dissented.

Arthur J. Mandell and Mandell & Wright, Houston, Tex., for appellant.

James K. Nance and William C. Harvin, Houston, Tex. (Baker, Botts, Andrews & Parish, Houston, Tex., of counsel), for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

**134**

BORAH, Circuit Judge.

The plaintiff, Roy Vernon McKie, instituted this action to recover under the Jones Act, 46 U.S.C.A. § 688, for personal injuries sustained while a member of the crew of the dredge L. D. No. 1, and to recover maintenance and cure under the general maritime law. The accident which formed the basis of the claims occurred while plaintiff was working in defendant's employ on a vessel engaged in dredging operations in Tabbs Bay, a body of water on the coast of Texas lying between Galveston Bay, San Jacinto Bay and Black Duck Bay.

After the plaintiff had presented his case to the jury the defendant moved for an instructed verdict and to dismiss on the ground that there was no jurisdiction in the court. In its motion to dismiss the defendant contended that there was either no evidence, or insufficient evidence, (1) that the dredge on which plaintiff was working at the time of his injury was engaged or employed on navigable waters of the United States; (2) that the dredge was engaged in navigation, in aid of navigation, or in maritime commerce; (3) that the plaintiff was a seaman or a member of the crew of the vessel. Further, and as additional grounds for dismissal, that the undisputed evidence showed as a matter of law that Tabbs Bay was non-navigable and that plaintiff's remedy was therefore exclusively within and under the Texas Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. In the alternative, and even if the evidence raises the issue that the dredge was employed on navigable waters that under the remaining undisputed evidence it must nevertheless be held as a matter of law that plaintiff's remedy is under the Texas Workmen's Compensation Act, since the matter in question is of mere local concern and the regulation of the relation of employer and employee thereunder works no material prejudice to the general maritime law.

The trial court in a published opinion [1] concluded that the motion was well taken and should be in all things sustained and that the suit should be dismissed for want of jurisdiction but without prejudice to plaintiff's right to pursue his remedy under the Texas Workmen's Compensation Act, which was exclusive of all other remedies. This appeal from the order of dismissal challenges the trial court's ruling in respect to the questions which were posed in the motion to dismiss and appellant, the plaintiff below, is here insisting that these questions were wrongly decided. To these questions we now turn.

The Jones Act, 46 U.S.C. § 688, in pertinent part, provides that "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply * *." It is clear from the plain wording of the Act that its benefits were conferred upon any seaman who should suffer personal injury in the course of his employment. The right of recovery under the Act, as in the case of maintenance and cure, depends not on the place where the injury is inflicted, this being wholly immaterial, but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters. Swanson v. Marra Bros., 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L.Ed. 1045; O'Donnell v. Great Lakes Co., 318 U.S. 36, 42, 63 S.Ct. 488, 490, 87 L.Ed. 596; Desper v. Starved Rock Ferry Co., 7 Cir., 188 F.2d 177, affirmed 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205. The nautical phrase, "plying in navigable waters" does not mean that the vessel must, at the very moment of the injury, have been actually in motion on navigable waters. Desper v. Starved Rock Ferry Co., 7 Cir., 188 F.2d 177, 182; cf. The Steamship Jefferson, 215 U.S. 130, 30 S.Ct. 54, 54 L.Ed. 125.

The court below held that the dredge upon which appellant was working when injured was not engaged in navigation, but in dredging under a contract with an oil producing company to dredge, not in aid of navigation generally but a channel

1. McKie v. Diamond Marine Co., D.C., 104 F.Supp. 275.

primarily for the use of such oil company; that the owners of the dredge had from time to time other similar contracts; and that the dredge was not engaged in transportation and did not transport either passengers or freight. We do not at all agree that the evidence in this record compels the conclusion that the dredge was not employed in navigation.[2] Cf. Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991, 995, and Gonzales v. United States Shipping Board, E. F. Corp., D.C., 3 F.2d 168, 170. Nor do we perceive the relevancy of the supportive findings. Admiralty jurisdiction is not limited to transportation of goods and passengers in interstate or foreign commerce but depends upon the jurisdiction conferred in Article 3, § 2, extending the judicial power of the United States to all cases of admiralty and maritime jurisdiction. This includes canals and other waters even if they be privately owned or claimed. Ex parte Boyer, 109 U.S. 629, 3 S.Ct. 434, 27 L.Ed. 1056; Silver Springs Paradise Co. v. Ray, 5 Cir., 50 F.2d 356; Guinan v. Boston, Cape Cod & New York Canal Co., 2 Cir., 1 F.2d 239.

The court below further found as a fact that the dredge was cutting a new channel and having so found, and in keeping with the decisions of this court, concluded that work of this local character was not so related to navigation as to bring employees while engaged in it under admiralty jurisdiction, but that the state workmen's compensation act provided the exclusive remedy. Fuentes v. Gulf Coast Dredging Co., 5 Cir., 54 F.2d 69; United Dredging Co. v. Lindberg, 5 Cir., 18 F.2d 453; see Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, 672.

Clifford T. Wheeler, a witness for the appellant, testified that a channel had previously existed at the location where the dredge was working on the fatal day; that the old channel had been dug with a dragline; that its usefulness had been impaired by a hurricane in the year 1949 which demolished wooden oil derricks in that area and partially clogged the channel; but that the channel remained sufficient to accommodate work barges except during low tide. He further stated that in order to make the channel available at all times for heavy equipment it was necessary to remove the timbers and deepen the waterway to six feet at mean low tide and in doing so a barge with a dragline mounted thereon was moored alongside the L.D. No. 1 to clear away the wooden debris so that the cutter head of the dredge could operate. The appellant testified that the dredge drew three feet of water; that vessels of like draft could be navigated anywhere in Tabbs Bay without staying in any of the numerous channels that crisscross this body of water; and that the work that the dredge was doing was to enable tow boats and barges to reach the wells under all tidal conditions and to create a perfectly level bottom at the required depth so that loaded mud barges could be emptied at the wells. The evidence which we have related, without more, would seem to be a complete answer to the holding that it was "certain" that the dredge was not cleaning out a channel, but was cutting a new one.

■■■■ We now turn to the question of whether the appellant is a seaman within the meaning of the Jones Act. The Jones Act concept of "seaman" since the passage of the Longshoremen's and Harbor Workers' Compensation Act,[3] has been narrowed to the point where it includes only one who is a member of the crew of

2. There was evidence that the dredge was in commission and at work in Tabbs Bay one-quarter of a mile from the shore at the time of the accident; that the bay is subject to the ebb and flow of the tide; that vessels navigating thereon include tow boats from twenty-five to fifty-five feet in length and barges up to one hundred feet in length carrying machinery, tools, and some cargo; that the dredge and other vessels entered the bay from the Houston Ship Channel by way of Cedar Bayou Channel or through Goose Creek; that there were often tugs around the dredge and other boats in the area where she operated; and Captain E. H. Young, who was licensed to pilot vessels in the Houston Ship Channel, gave as his opinion that the area in which the dredge was operating was navigable.

3. 33 U.S.C. § 901 et seq.

a vessel plying in navigable waters. Swanson v. Marra Bros., supra; Desper v. Starved Rock Ferry Co., supra, 188 F.2d 177, 179. The essential and decisive elements of the definition of a "member of a crew" are that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation.

Appellant was employed in January, 1949, as a deck-hand on the dredge and some three weeks thereafter became a leverman on the same vessel. He was working there in the latter capacity at the time of his injury, February 15, 1950, and his assigned duties included operating the dredge machinery, tending lines, and maneuvering the vessel by means of her spuds and anchors in order to accomplish the work she was doing. Appellant was further required to operate the dredge tender, a twenty-five foot motor vessel which he used to tow the dredge to various locations in and out of Tabbs Bay, to transfer dredge crews to and from the shore, and to handle the dredge's pipe line. Appellant and all other employees on the dredge lived, ate and slept ashore as the dredge had no sleeping quarters or facilities for feeding personnel. Appellant worked a regular eight-hour shift and was usually on board the dredge only during his shift. He was paid an hourly wage and signed no shipping articles, though he had for many years followed the sea and held a tankerman's license.

From these facts, it is apparent that each side has supporting evidence for the conclusion it urges. The fact that the appellant slept at home and boarded ashore, although not conclusive of his status, points to a finding that he was not a member of the crew. The dredge had no motive power, was not a wide traveler, and when moved any distance was towed by a tug. Yet appellant worked at whatever travel there was by this vessel. He had that more or less permanent attachment to the vessel which commonly characterizes a crew, and, in common with the whole ship's company, was aiding in navigation whether or not he was required to "hand, reef and steer."

Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 751, 88 L.Ed. 931. In Kibadeaux v. Standard Dredging Co., supra, the injured person was not an articled seaman, and was mainly doing the work of a laborer, but by reason of his permanent employment and duties aboard a similar dredge we held him a seaman entitled to sue under the Jones Act. Whether or not the same conclusion eventually is to be reached here, we are of opinion that the question was not one of law for the court to decide but was one of fact for the jury since there was evidence on which a jury could reasonably find that the plaintiff was a crew member under the Jones Act. Gahagan Const. Corporation v. Armao, 1 Cir., 165 F.2d 301; Schantz v. American Dredging Co., 3 Cir., 138 F.2d 534; and Carumbo v. Cape Cod S. S. Co., supra. Whatever may be the ultimate finding upon this question, the issue is not one of "jurisdictional fact." Schantz v. American Dredging Co., supra; Hagens v. United Fruit Co., 2 Cir., 135 F.2d 842.

The other error assigned relates to the admissibility of evidence and is without merit.

The judgment is reversed and the cause remanded for further proceedings not in consistent with this opinion.

Reversed and remanded.

HUTCHESON, Chief Judge (dissenting).

I have little fault to find with the legal principles announced in the majority opinion and as little to find with its statement of the facts as opposed to the conclusions it draws from them.

I find myself, though, for the reasons hereafter briefly stated, unable to agree with its conclusion that there were disputed issues of fact and that the judgment should be reversed to permit of their determination on a trial.

It seems quite clear to me: that the record presented no disputed issues of fact and no basis for drawing more than an inference therefrom. It seems equally clear that the district judge was right, therefore, in concluding as matter of law that plaintiff was not a seaman and that he "had

failed to show a right to maintain the suit under the Jones Act, in admiralty or otherwise."

I am further of the opinion that if the conclusion demanded by the evidence is that plaintiff was a seaman, and that the accident did occur on navigable waters, plaintiff could still not recover in the action because he was not "a master or member of a crew of any vessel", and the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901, furnished his exclusive remedy. Continental Casualty v. Lawson, 5 Cir., 64 F.2d 802; De Bardeleben Coal Corp. v. Henderson, 5 Cir., 142 F.2d 481; Desper v. Starved Rock Ferry Co., 7 Cir., 188 F.2d 177.

Since under either of these theories the judgment dismissing the action should be affirmed, I dissent from its reversal.

Rehearing Denied; HUTCHESON, Chief Judge, dissenting.