Mr. Thomas A. Bustin City Attorney City of Clearwater Post Office Box 4748 Clearwater, Florida 33518-4748
Dear Mr. Bustin:
This is in response to your request for my opinion on substantially the following questions:
 1. ARE VESSELS WHICH ARE USED AS A PERSON'S PRIMARY RESIDENCE "LIVE-ABOARD VESSELS" FOR PURPOSES OF s 327.60(2), F.S., EVEN THOUGH THEY MAY ALSO BE USED FOR RECREATIONAL PURPOSES?
 2. WHAT ARE THE RIGHTS OF NAVIGATION WHICH A MUNICIPALITY IS PROHIBITED FROM REGULATING PURSUANT TO s 327.60(2), F.S., WHEN ENGAGED IN BY NON-LIVE-ABOARD VESSELS?
Inasmuch as both questions involve the application of s 327.60(2), F.S., your questions are related and will be answered together.
Your inquiry states that the City of Clearwater maintains a marine police patrol which is engaged in the regulation of local maritime traffic and the enforcement of state statutes governing marine activity. You further state that the city officials have encountered considerable difficulty in applying the provisions of s 327.60(2), F.S., in that "it is extremely difficult to ascertain whether a vessel is a `live-aboard vessel' for the purposes of this statute." Moreover, "municipal officials are at a loss to understand when non-live aboard vessels are engaged in the exercise of rights of navigation, and therefore outside the jurisdiction of the municipal authorities." With respect to the definition of "live-aboard vessel" in s 327.02(13), F.S. (1984 Supp.), you ask specifically whether "the occasional recreational use ordinarily associated with any vessel, including a house boat, deprive[s] municipal authorities of jurisdiction?" Finally, as to the exercise of rights of navigation by non-live-aboard vessels, you state that city officials are in doubt as to their authority to regulate the mooring and anchoring of such vessels.
Section 327.60, F.S., provides as follows:
327.60 Local regulations; limitations. —
 (1) The provisions of ss. 327.01-327.11, 327.13-327.16, 327.18, 327.19, 327.28, 327.30-327.40, 327.44-327.51, 327.54, 327.56, and 327.65 shall govern the operation, equipment, and all other matters relating thereto whenever any vessel shall be operated upon the waterways or when any activity regulated hereby shall take place thereon. Nothing in these sections shall be construed to prevent the adoption of any ordinance or local law relating to operation and equipment of vessels, except that no such ordinance or local law may apply to the Florida Intracoastal Waterway and except that such ordinances or local laws shall be operative only when they are not in conflict with this chapter or any amendments thereto or regulations thereunder.
 (2) Nothing contained in the provisions of this section shall be construed to prohibit local governmental authorities from the enactment or enforcement of regulations which prohibit or restrict the mooring or anchoring of floating structures or live-aboard vessels within their jurisdictions. However, local governmental authorities are prohibited from regulating the anchorage of non-live-aboard vessels engaged in the exercise of rights of navigation.
"Live-aboard vessels" are defined for purposes of Chs. 327 and 328, F.S., in s 327.02(13), F.S. (1984 Supp.), in the following terms:
(13) "Live-aboard vessel" means:
(a) Any vessel used solely as a residence;
or
 (b) Any vessel represented as a place of business, a professional or other commercial enterprise, or a legal residence.
 A commercial fishing boat is expressly excluded from the term "live-aboard vessel."
From this alternative statutory definition, it clearly appears that a vessel can be a "live-aboard vessel" under s 327.02(13)(b), F.S. (1984 Supp.), even if it is not used solely as a residence, as long as it is "represented as a place of business, a professional or other commercial enterprise, or a legal residence." (e.s.) You suggest that the criteria applied by Florida courts in defining the term "legal residence" "are difficult to apply to any circumstances, but especially difficult in relation to vessels." To the extent that the courts in Ogden v. Ogden, 33 So.2d 870 (Fla. 1947), and Brown v. Brown, 123 So.2d 382
(2 D.C.A.Fla., 1960), have emphasized that the best single evidence of legal residence is where the person says it is, you further suggest that "if municipal authorities were required to ask an individual to acknowledge that the vessel is his `legal residence,' the municipal authorities would be at the mercy of the public in determining where their jurisdiction lies" for purposes of s 327.60(2), F.S. Accordingly, you alternatively phrase your first question as an inquiry into the indicia municipal marine patrol officers may look to assist in determining whether a vessel is a legal residence and thus within the definition of "live-aboard vessel" at s 327.02(13)(b), F.S.
A "legal residence" is a location where a person is presently living with the present intention of making it his permanent abode. Minick v. Minick, 149 So. 483 (Fla. 1933); Wade v. Wade,113 So. 374 (Fla. 1927). And see, Walker v. Harris, 398 So.2d 955, 958
(4 D.C.A.Fla., 1981), stating: "A person may have several temporary local residences, but can have only one legal residence. A legal residence, or domicile, is the place where a person has fixed an abode with the present intention of making it their [sic] permanent home." See also, Black's Law Dictionary 807 (5th Ed. 1979), defining "legal residence" as "[p]ermanent fixed place of abode which person intends to be his residence and to which he intends to return despite . . . temporary absences." While subjective intention is the best evidence of "legal residence," Florida courts have clearly recognized that residence may be established by objective facts as well. See, Brown v. Brown, supra, at 383, stating that "residence is a matter of objective fact." See also, Walker v. Harris, supra, at 958, stating that, although subjective intent is the best proof of domicile, "[t]his is not to suggest that proof of legal residence cannot be measured by objective factors[.]"
Therefore, I am of the opinion that vessels which are used as a person's primary residence may be "live-aboard vessels" for purposes of municipal regulation permitted by s 327.60(2), F.S., even though they are not used solely as a residence but are also used for recreational purposes, if such vessels are represented as such person's "legal residence" pursuant to s 327.02(13)(b), F.S. (1984 Supp.), and that the determination of whether such vessels are represented as a person's legal residence may be based on a combination of the person's subjective intent and objective facts. However, this office ordinarily refrains from resolving questions of fact in order to avoid an unwarranted intrusion into the province of the judiciary; thus, I must decline to discuss specific objective "indicia" from which municipal marine patrol officers may infer that a vessel is a "legal residence" and therefore a "live-aboard vessel" for purposes of s 327.60(2). Such questions of fact can only be resolved by a court of law in appropriate judicial proceedings. See, e.g., the court's discussion of the testimony of record in Walker v. Harris, supra; and the relative weight to be accorded thereto. Cf., United States v. Calhoun, 566 F.2d 969 (5th Cir. 1978) (court's discussion of objective facts in evidence supporting determination of taxpayer's "legal residence").
Finally, you inquire as to the meaning of the term "rights of navigation," as that term is used in s 327.60(2), F.S. While the statute provides that nothing in the section shall be construed to prohibit a local government from enacting or enforcing regulations which prohibit or restrict the mooring or anchoring of floating structures or live-aboard vessels within their jurisdictions, local governmental authorities are prohibited from regulating "the anchorage of non-live-aboard vessels engaged in the exercise of rights of navigation." I am unaware of any appellate decision of the courts of this state interpreting this provision of s327.60(2), But see generally, Ferry Pass Inspectors' and Shippers' Association v. White's River Inspectors' and Shippers' Association, 48 So. 643 (Fla. 1909); Silver Springs Paradise Co. v. Ray, 50 F.2d 356, 359 (5th Cir. 1931), cert. denied, 284 U.S. 649
(1931) ("The public right of navigation entitles the public generally to the reasonable use of navigable waters for all legitimate purposes of travel or transportation, for boating or sailing for pleasure, as well as for carrying persons or property gratuitously or for hire, and in any kind of water craft the use of which is consistent with others also enjoying the right possessed in common"); 65 C.J.S. Navigable Waters s 22.
As you have noted in supplemental material attached to your inquiry, "[i]t is clear . . . from the statutory language itself that the legislature intended that at least in some instances anchorage engages the exercise of rights of navigation [since] [t]o read the statute otherwise would be to nullify its meaning entirely." Cf., Sharer v. Hotel Corp. of America, 144 So.2d 813
(Fla. 1962) (it should never be presumed that legislature intended to enact purposeless, and therefore useless legislation); Smith v. Piezo Technology and Professional Administrators, 427 So.2d 182
(Fla. 1983). Moreover, public rights on navigable waters are not generally restricted to navigation in the strict sense but also encompass such incidental rights as are necessary to render the broader rights reasonably available, including the right of the navigator to anchor and to moor without unreasonably obstructing others' navigation rights. 65 C.J.S. Navigable Waters s 22; at p. 135. But see, Hall v. Wantz, 57 N.W.2d 462 (Mich. 1953), holding that the public right of navigation does not include as incident thereto the right to anchor indefinitely on riparian owner's premises, particularly when such anchorage is attended with dumping of refuse, pollution of waters, and consequent impairment of riparian owner's use and enjoyment of his property. Thus, it would appear that the plain statutory language of s 327.60(2) and the common-law inclusion of rights of anchorage as an element of the exercise of rights of navigation compel the conclusion that a municipality is prohibited from regulating the anchorage of non-live aboard vessels when such anchorage is incident to the exercise of rights of navigation.
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that vessels which are used as a person's primary residence may be "live-aboard vessels" for purposes of municipal regulation permitted by s 327.60(2), F.S., even though they are not used solely as a residence but are also used for recreational purposes, if such vessels are represented as such person's "legal residence" pursuant to s 327.02(13)(b), F.S. (1984 Supp.); the determination of whether such vessels are represented as a person's legal residence may be based on a combination of the person's subjective intent and objective facts; in addition, the plain statutory language of s 327.60(2) and the inclusion of rights of anchorage as an element of the exercise of rights of navigation compel the conclusion that a municipality is prohibited from regulating the anchorage of non-live-aboard vessels when such anchorage is incident to the exercise of rights of navigation.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General