**UNITED STATES of America, Plaintiff,**

v.

**WESTERN CONTRACTING CORPORATION, Defendant.**

**No. 83–6700–Civ–Gonzalez.**

United States District Court, S.D. Florida, N.D.

May 10, 1985.

Gary W. Allen, Thomas W. Osborne, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Courtney Wilder Stanton, Jacksonville, Fla., John M. Kops, Faris, Ellis, Cutrone & Gilmore, New Orleans, La., for defendant.

### ORDER

GONZALEZ, District Judge.

THIS CAUSE is before the court upon the defendant's Motion for Summary Judgment. The court has carefully considered the motion, the memoranda, the entire record and the oral argument of able counsel. For the reasons set forth below, the Motion will be GRANTED.

On July 16, 1957, the United States Navy Department received permission from the United States Department of the Army to lay several underwater marine cables. These armored submarine cables were then laid on the floor of the Atlantic Ocean near the United States Navy Surface Weapons Center, Fort Lauderdale Facility, Port Everglades, Florida. The cables were neither buried nor entrenched in any manner; they merely were laid loosely on the ocean floor.

The parties agree that during 1980, the defendant was under contract to the United States Army Corps of Engineers to conduct dredging operations for improving navigation within the Port Everglades Harbor entrance. Between September and October of 1980, during the performance of dredging activity, several cables within the underwater cable field sustained damage.

The plaintiff maintains that either the unseaworthiness of the dredge, WESTERN CONDOR, or the negligence of those in charge of its operation caused the damage. The defendant disagrees and filed its Motion for Summary Judgment.

To prevail on its Motion for Summary Judgment, the defendant must prove that there is no genuine issue as to the fact that (a) the WESTERN CONDOR was a vessel in navigation; and (b) the plaintiff assumed full responsibility for damage caused by a vessel in navigation to the underwater cable field.

The parties do not contest the fact that the WESTERN CONDOR was, indeed, performing dredging operations at the time.

The court finds that the WESTERN CONDOR was a vessel in navigation at the time of the complained of incident. The law is well settled that a dredge performing dredging operations for the purpose of maintaining or improving navigable waterways is a vessel in navigation. *Butler v. Ellis*, 45 F.2d 951 (4th Cir.1930); *McKie v. Diamond Marine Co.*, 204 F.2d 132 (5th Cir.1953); *Southern Natural Gas Co. v. Gulf Oil Corp.*, 320 So.2d 917 (La.App. 3rd Cir.1975).

The government, however, maintains that damage to the cable field was not caused by a vessel in navigation since the damage was actually caused by a discharge pipe that broke free from the dredge. By analogy, the plaintiff contends that it was not the pistol that injured the victim, but rather the bullet fired from the pistol.

While this argument is creative, it is not persuasive. The damage was clearly the direct result of the WESTERN CONDOR's dredging operations.

The court further finds that pursuant to the permit issued to the plaintiff by the Department of the Army, the plaintiff assumed full responsibility for damage suffered by the cable field by the defendant's dredge—a vessel then in navigation.

No obstruction of navigable waterways is permitted under section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C., section 403. The Secretary of the Army, however, is authorized to grant exceptions to this prohibition. 33 U.S.C. § 403. Before the Navy Department could install its Port Everglades underwater cable field, it was required to apply for and obtain necessary approval from the Secretary through the Corps of Engineers. The issued permit was subject to specific conditions. Specifically, the condition at issue herein provides:

> (h) That the permittee shall assume full responsibility for any and all damage which may be caused by, or to, navigation by reason of the placing of cables loosely on the bottom.

The permit further reveals that "section h" was unconditional.

The plaintiff maintains, nevertheless, that "section h" does not mean what it clearly says.

The plaintiff maintains that regardless of the express language of "section h", plaintiff does *not* assume full responsibility for damages "caused by, or to, navigation by reason of the placing of cables loosely on the bottom." In other words, the plaintiff asserts that it may recover for damage caused by third parties in "navigation" to the "cables [placed] loosely on the bottom." The plaintiff, therefore, would have this court find that "section h" is merely surplusage within a government permit.[1]

The plaintiff, United States, argues that *Postal Telegraph-Cable Co. v. Bahama Line, Ltd.*, 1943 A.M.C. 369 (S.D.Fla.1943), is on all fours with the case *sub judice.* This court disagrees.

In *Postal Telegraph*, the War Department issued a permit to a private company containing language similar to that found within "section h." The permit authorized the installation of submarine cable. When the cable field was damaged by a motor vessel, Postal Telegraph sought to recover damages. The defendant argued that as Postal Telegraph assumed responsibility for damages, it was released from liability.

In the *Postal Telegraph* permit, however, the assumption of risk clause was limited by another clause which provided:

> That this authority does not give any property rights either in real estate or material or any exclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, State or local laws and regulations, nor does it obviate the necessity of obtaining State assent to the work authorized. *It merely expresses the assent of the Federal Government* so far as concerns the public rights of navigation.

*Id.* at 370 (Emphasis provided).

The *Postal Telegraph* court at 370 also noted specifically that "[t]his last quoted sentence clearly negates any intent to make the permit a contract for the benefit of third parties." The court then determined that the permit merely authorized the plaintiff to lay cable; it did not create a benefit inuring to third parties. *Ibid.*

The *Postal Telegraph* decision is distinguishable from the facts herein. The instant permit is an inter-agency permit containing no limiting conditions. This instant permit provides that if the Navy Department wished to lay cables loosely on the

---

1. The plaintiff also argues that as the permit did not require that cables be entrenched, the permittee does not assume risk of damage. None of the permits issued in the plaintiff's supporting case law contain "section h" type clauses. Thus, this argument is not persuasive. See, *AT & T v. Steuart*, 1978 A.M.C. 1680 (D.Md.1977); *Petition of Potomac Sand and Gravel Co.*, 253 F.Supp. 268 (D.Md.1966); *Thompson v. Consolidated Gas, Electric and Power Co.*, 111 F.Supp. 719 (D.Md.1953).

bottom of the Atlantic Ocean in the Port Everglades channel, the Navy Department *must be responsible for damages* caused to the cable field by navigation.

The plaintiff knew the risks inherent to laying cables loosely on the ocean floor in a well-traveled shipping channel. It accepted those risks.

Any damage caused to the cable field by navigation is the sole responsibility of the plaintiff United States and not of the dredge or its owners.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion for Summary Judgment be and the same is GRANTED. Within ten (10) days of the date of this Order, the defendant shall submit a proposed final judgment for this court's consideration.

