**VERIZON MARYLAND, INC., Plaintiff**

v.

**MOBILE DREDGING AND PUMPING COMPANY, Defendants**

**In the Matter of Mobile Dredging And Pumping Co. as Owner of Dredge D–31**

**Nos. CIV. AMD04–727, CIV. AMD04–1062.**

United States District Court, D. Maryland.

Sept. 6, 2004.

---

Margaret Melissa Glassman, McGuire-Woods LLP, McLean, VA, for Plaintiff and Claimant.

David W. Skeen, Wright Constable and Skeen LLP, Baltimore, MD, for Defendant and Plaintiff.

## MEMORANDUM OPINION

DAVIS, District Judge.

These cases, one an action for compensatory damages resting on diversity of citizenship jurisdiction under 28 U.S.C. § 1332, and one instituted pursuant to the Limitation of Liability Act, 46 U.S.C.App. § 183, and Supplemental Admiralty Rule F, for exoneration from or limitation of liability resting on admiralty jurisdiction under 28 U.S.C. § 1333, arise out of a casualty occurring during dredging operations conducted by Mobile Dredging and Pumping Company ("Mobile"). Specifically, Mobile damaged underwater cables owned by Verizon Maryland, Inc. ("Verizon"), in the course of its operations on the Bird River in Baltimore County. Now pending is Mobile's motion for summary judgment, to which Verizon has filed its opposition. No hearing is necessary. For the reasons stated below, the motion shall be denied. *See* Fed.R.Civ.P. 56.

In October 2003 Mobile was performing channel maintenance and control dredging at various locations on the Bird River in Baltimore County. While Mobile was either navigating one of its work boats or operating its dredge in navigation, it damaged two underwater cables "laid loosely on the bottom from shore to shore ... between Lorely Beach and the Smuck property." Verizon seeks compensatory damages of $600,000, representing its costs to repair and restore the damaged cable.

Chesapeake and Potomac Telephone Company of Maryland, Verizon's predecessor, had laid the cable pursuant to a permit issued by the Corps of Engineers on or about March 30, 1971. The permit contains the following provisions, paragraphs (a) and (v), among others:

(a) That this instrument does not convey any property rights either in real estate or material, or any exclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, State or local laws and regulations, nor does it obviate the necessity of obtaining State or local assent required by law for the structure or work authorized.

\* \* \* \* \* \*

(v) That the permittee shall assume full responsibility for any and all damage which may be caused by or to navigation by reason of placing the cable loosely on the bottom.

Mobile contends that paragraph (v) quoted above exonerates it from liability as a matter of law. That is, Mobile contends that paragraph (v) must be read as imposing on Verizon an assumption of the risk of damage to unburied cable. In support, Mobile cites *United States v. Western Contracting Corp.*, 609 F.Supp. 182, 1985 A.M.C. 2852 (S.D.Fla.1985). The permit at issue in *Western Contracting Corp.* in-

cluded a provision that was virtually identical to paragraph (v) of the permit at issue in this case. The *Western Contracting Corp.* court granted summary judgment in favor of the defendant and against the plaintiff, the United States, as to the claim of the United States for damage to its unburied cable. In short, the court concluded as a matter of law, as Mobile argues here, that the United States assumed the risk of damage to its cables from vessels in navigation. Accordingly, Mobile contends, *Western Contracting Corp.* establishes a rule that a "permittee who chooses not to bury its cables assumes the risk of damage to its cables caused by navigation." Notably, the permit at issue in *Western Contracting Corp.* did not contain a provision similar to paragraph (a) quoted above.

In contrast, Verizon seeks to distinguish *Western Contracting Corp.* by citation to *Postal Telegraph–Cable Co. v. Bahama Line, Ltd.*, 1943 A.M.C. 369 (S.D.Fla.1942), an earlier "damaged cable" case, as to which the relevant permit did contain language similar to paragraph (a) above, and which was in fact considered and rejected as controlling by the court in *Western Contracting Corp.* In *Postal Telegraph–Cable Co.*, the defendant argued, in reliance on a similar "assumption of risk" provision as paragraph (v) quoted above, that the Corps of Engineers permit constituted a "contract" for the benefit of "third parties," including itself, which had the effect of releasing such parties from liability, "even for ordinary negligence in injuring the cable." *Id.* at 370. In addition to an "assumption of risk" provision, however, the permit in *Postal Telegraph–Cable Co.* contained the following limitation on the assumption of risk provision, which, as can be seen, is virtually identical to paragraph (a) of the permit at issue in this case, except that the final, italicized, sentence recited below does not appear in the permit before this court:

That this authority does not give any property rights either in real estate or material or any exclusive privileges; and that it does not authorize any injury to private property or invasion of private rights, or any infringement of Federal, State or local laws and regulations, nor does it obviate the necessity of obtaining State assent to the work authorized. *It merely expresses the assent of the Federal Government so far as concerns the public rights of navigation.*

1943 A.M.C. at 370. The *Postal Telegraph–Cable Co.* court specifically concluded that the last sentence "negative[d] any intent to make the permit a contract for the benefit of third parties." *Id.*

Thus, in response to Mobile's reliance on *Western Contracting Corp.*, which applied the plain meaning of the *unlimited* assumption of risk provision, Verizon contends that because the permit at issue in *Western Contracting Corp.* did not include the *limitation* on the "assumption of risk" provision which was contained in the *Postal Telegraph–Cable Co.* permit, *Postal Telegraph–Cable Co.* is the most persuasive precedent available to this court, and not *Western Contracting Corp.*

Mobile's sole rejoinder to Verizon's argument is to note that the final sentence in the provision limiting the assumption of the risk provision—*"It merely expresses the assent of the Federal Government so far as concerns the public rights of navigation."*— is not part of the provision in the permit at issue here. Mobile's attempt to limit the *Postal Telegraph–Cable Co.* ruling is without merit. Although Mobile correctly notes that the *Postal Telegraph–Cable Co.* court emphasized the last sentence, it is nonsensical to conclude that without this sentence the limitation on the assumption of risk provision is without meaning. Instead, the permit plainly states that "it does not authorize injury to private property." Accordingly, Mobile is

not entitled to summary judgment on the basis that assumption of the risk is imposed on Verizon as a matter of law under the terms of the permit issued to its predecessor-in-interest. Whether assumption of the risk might be available otherwise as a defense remains an open question not briefed by the parties.

An Order denying the motion for summary judgment follows.* A scheduling order shall issue forthwith.

---

* Verizon has asserted numerous other, largely fact-based arguments in opposition to Mobile's motion for summary judgment. It contends that (1) Mobile failed to comply with the "Miss Utility" Act mandating that Mobile contact the Maryland Public Service Commission and any utility owner prior to excavation near the underground utility (citing M.D. CODE. ANN., PUBLIC UTILITY COMM. §§ 12–108(a), 109 (2003); *and see Board of County Comm. v. Bell Atlantic–Maryland, Inc.*, 346 Md. 160, 695 A.2d 171, 175 (1997)); (2) Mobile failed to raise the assumption of the risk as an affirmative defense; (3) Mobile failed to show that Verizon is in fact bound by the permit issued to its predecessor, Chesapeake and Potomac Telephone Company of Maryland, the actual permittee; (4) the 1971 permit relates to the cables at issue in this case; (5) the cables were damaged from being "loosely" placed; (6) the condition of the cables remained unchanged from 1971 until 2003; and (7) the cables actually obstructed Mobile's operations. I need not discuss these issues in detail as they either are easily resolved as a matter of law, cured by amendment of the pleadings, or, indeed, pose genuine disputes of material fact at this stage and thus, are best left for resolution after the completion of discovery.